**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x

DELAWARE TRUST COMPANY, as TCEH          :
First Lien Indenture Trustee,            :
                                         :
                        Plaintiff,       :
                                         :
            -against-                    :          Case No. 1:15-cv-02883-PAE
                                         :
                                         :
WILMINGTON TRUST, N.A., as First Lien    :
Collateral Agent and First Lien Administrative :
Agent,                                   :
                                         :
                        Defendant.       :
-----------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF TITAN INVESTMENT HOLDINGS LP'S**
**<u>MOTION TO INTERVENE</u>**

Salvatore Romanello, Esq.
Ronit Berkovich, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Attorneys for Intervenor-Defendant Titan
Investment Holdings LP

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................ 3

ARGUMENT ..................................................................................................................... 7

I.     TITAN'S MOTION TO INTERVENE SHOULD BE GRANTED EITHER AS OF RIGHT OR PERMISSIVELY ........................................................................... 7

     A.     Titan is Entitled to Intervention as of Right Under FRCP 24(a)(2) ....................... 8

          1.     Titan has a Direct, Substantial, and Legally Protectable Interest in the Subject Matter of This Action .............................................................. 8

          2.     Titan's Ability to Protect Its Interests May Be Impaired By An Adverse Judgment ................................................................................... 10

          3.     The Named Parties Do Not Adequately Represent Titan's Interests ........ 11

     B.     The Court Should Grant Titan Permissive Intervention Under FRCP 24(b)(1)(B) ....................................................................................................... 14

          1.     Titan's Interests Share Common Questions of Law and Fact with the Issues in the Action .......................................................................... 14

          2.     Intervention Will Not Unduly Delay The Proceedings Or Prejudice Substantive Rights Of Existing Parties ................................................... 16

CONCLUSION ................................................................................................................. 17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bear Stearns Companies, Inc. Securities, Derivative, and Erisa Litigation*,
    297 F.R.D. 90 (S.D.N.Y. 2013) .................................................................................. 9, 11

*Brennan v. N.Y.C. Bd. of Educ.*,
    260 F.3d 123 (2d Cir. 2001) ...................................................................................... 8, 10

*Brooks v. Sussex County State Bank*,
    167 F.R.D. 347 (N.D.N.Y. 1996) ................................................................................... 13

*CBS Inc. v. Snyder*,
    136 F.R.D. 364 (S.D.N.Y. 1991) ................................................................................... 11

*Clarkson v. Coughlin*,
    145 F.R.D. 339 (S.D.N.Y. 1993) ................................................................................... 14

*Dixon v. Heckler*,
    589 F. Supp. 1512 (S.D.N.Y. 1984) .............................................................................. 12

*Dow Jones & Co., Inc. v. U.S. Dept. of Justice*,
    161 F.R.D. 247 (S.D.N.Y. 1995) ......................................................................... 11, 14, 15

*Edge Mgmt. Consulting, Inc. v. Blank*,
    807 N.Y.S.2d 353 (1st Dep't 2006) .............................................................................. 10

*E. Potato Dealers, Inc. v. TNC Packing Corp.*,
    No. 08-CV-6280 (CJS), 2011 WL 2669632 (W.D.N.Y. July 6, 2011) ................................ 9

*Export-Import Bank of the Repub. Of China v. Grenada*,
    No. 13 Civ. 1450, 2013 WL 4414875 (S.D.N.Y. Aug. 19, 2013) ...................................... 8

*German v. Federal Home Loan Mortg. Corp.*,
    899 F. Supp. 1155 (S.D.N.Y. 1995) .............................................................................. 14

*H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.*,
    797 F.2d 85 (2d Cir.1986) ............................................................................................ 16

*Home Ins. Co. v. Liberty Mut. Ins. Co.*,
    No. 87 Civ. 0675 (SWK), 1990 WL 188925 (S.D.N.Y. Nov. 20, 1990) .......................... 8, 10

*Int'l Design Concepts, LLC v. Saks Inc.*,
    486 F. Supp. 2d 229 (S.D.N.Y. 2007) ........................................................................... 16

*Louis Berger Group, Inc. v. State Bank of India*,
    802 F. Supp. 2d 482 (S.D.N.Y. 2011) ......................................................................... 7, 15

*In re Macrose Industries Corp.*,
 186 B.R. 789 (E.D.N.Y. 1995) ....................................................................................................7

*New England Petroleum Corp. v. Federal Energy Administration*,
 71 F.R.D. 454 (S.D.N.Y. 1976) ..................................................................................................11

*New York v. Abraham*,
 204 F.R.D. 62 (S.D.N.Y. 2001) ..................................................................................................15

*In re Oceana Int'l, Inc.*,
 49 F.R.D. 329 (S.D.N.Y. 1969) ..................................................................................................10

*In re Pandora Media, Inc.*,
 Nos. 12 Civ. 8035, 41 Civ. 1395, 2013 WL 6569872 (S.D.N.Y. Dec. 13, 2013)......................11

*Peterson v. Islamic Republic of Iran*,
 290 F.R.D. 54 (S.D.N.Y. 2013) ....................................................................................................9

*S.E.C. v. Credit Bancorp, Ltd.*,
 124 F. Supp. 2d 824 (S.D.N.Y. 2000) .......................................................................................16

*S.E.C. v. Credit Bancorp, Ltd.*,
 194 F.R.D. 457 (S.D.N.Y. 2000) ................................................................................................16

*Schiller v. City of New York*,
 No. 04 Civ. 7922 (KMK)(JC), No. 04 Civ. 7921 (KMK)(JC), 2006 WL 2788256 (S.D.N.Y. Sept. 27, 2006) ... 16

*Tachiona ex. Rel. Tachiona v. Mugabe*,
 186 F. Supp. 2d 383 (S.D.N.Y. 2002) .........................................................................................7

*Tide Nat. Gas Storage I, L.P. v. Falcon Gas Storage Co.*,
 No. 10 CV 5821, 2012 U.S. Dist. LEXIS 188864 (S.D.N.Y. Aug. 7, 2012)...............................15

*Trbovich v. United Mine Workers of Am.*,
 404 U.S. 528, 92 S. Ct. 630 (1972) ...........................................................................................11

*In re Tribune Co. Fraudulent Conveyance Litig.*,
 291 F.R.D. 38 (S.D.N.Y. 2013) ....................................................................................................8

*Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*,
 872 F. Supp. 870 (S.D.N.Y. 1991) .............................................................................................12

**Rules**

FED. R. CIV. P. 12 ...........................................................................................................................1

FED. R. CIV. P. 24 .....................................................................................................................7, 11

FED. R. CIV. P. 24(a) ..................................................................................................................7, 12

FED. R. CIV. P. 24(a)(2) .........................................................................................................*passim*

FED. R. CIV. P. 24(b).......................................................................................................7, 14, 15, 16

FED. R. CIV. P. 24(b)(1)(B)...........................................................................................................2, 14, 15

FED. R. CIV. P. 24(c) ...............................................................................................................................1

**Other Authorities**

7C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1904 (3d ed.)................................7

7C Wright & Miller, Federal Practice & Procedure: Civil § 1913 (2d ed. 1986) ....................................16

This Memorandum of Law is respectfully submitted on behalf of Titan Investment Holdings LP ("Titan") in support of its Motion to Intervene (the "Motion"), pursuant to Federal Rule of Civil Procedure ("FRCP") 24, in the above-captioned action brought by plaintiff Delaware Trust Company, as TCEH First Lien Indenture Trustee ("Plaintiff" or "Delaware Trust") against Wilmington Trust, N.A., as First Lien Collateral Agent and First Lien Administrative Agent (the "Administrative Agent" or "Defendant").[1]

## PRELIMINARY STATEMENT

This case arises from a dispute over the distribution of adequate protection payments made to and among the senior secured creditors of Texas Competitive Electric Holdings ("TCEH"), which, together with its affiliates and its ultimate parent, Energy Future Holdings, Inc., filed for bankruptcy under chapter 11 in the United States Bankruptcy Court for the District of Delaware on April 29, 2014 (the "Petition Date").  At the time of the chapter 11 filing, TCEH had a total of approximately $25.6 billion in principal amount of first lien debt ("First Lien Debt") including (i) $22.6 billion of term loan and revolving loan debt outstanding under a credit agreement (the "Bank Debt") for which the Administrative Agent serves as successor administrative agent; (ii) $1.75 billion in 11.50% senior secured notes (the "First Lien Notes"), for which plaintiff Delaware Trust serves as indenture trustee; and (iii) $1.23 billion of debt outstanding under first lien interest rate swap agreements (the "First Lien Swaps") held by first

---

[1] Pursuant to FRCP 24(c), a proposed Answer-in-intervention on behalf of Intervenor Titan is submitted as Exhibit J to the annexed Affirmation of Ronit Berkovich (hereinafter, the "Berkovich Aff.").  If this Motion is granted, Titan will file its proposed Answer-in-intervention two weeks after the disposition of this and other motions, as set forth by the Court in its Scheduling Order dated April 20, 2015 [Dkt. 26].  Titan reserves its rights to file a motion to dismiss under Rule 12 prior to the filing of the proposed answer.

lien swap holders ("First Lien Swapholders").[2]  Titan presently owns $167,153,165 of first lien

Bank Debt, plus accrued and unpaid interest.[3]  A ruling for Delaware Trust on behalf of the First

Lien Noteholders would result in unequal distributions of adequate protection payments to Titan

on account of its interest in the Bank Debt as compared with other First Lien Debtholders and

could ultimately reduce Titan's total share of adequate protection payments.[4]  Accordingly, Titan

has a direct, substantial, and legally protectable interest in the subject matter of this action, and

as set forth below, satisfies every requirement for intervention as a matter of right, or, in the

alternative, for permissive intervention.

   *First*, Titan is entitled as a matter of right to intervene under FRCP 24(a)(2) because the

action involves claims for damages relating to the disposition of property belonging to Titan and,

as such, Titan may be adversely affected by any judgment in this proceeding.  Titan has a direct,

substantial, and legally protectable interest in the subject matter of this proceeding, and no other

Bank Debt holder, nor any named party, has the ability or right to represent Titan's interest in

this proceeding.

   *Second*, Titan should also be granted leave for permissive intervention under FRCP

24(b)(1)(B) since Titan's interests share common questions of law and fact with the underlying

action.  This Court's interpretation of the Intercreditor Agreement may impact Titan's rights

---

[2] *See* Berkovich Aff. ¶ 3.

[3] *See* annexed Affirmation of Joe Freedman ("Freedman Aff.") ¶ 6.  Titan is an affiliate of
Brookfield Asset Management Private Institutional Capital Adviser, LP ("BAMPIC").  *Id*. at ¶ 1.
BAMPIC and certain of its affiliated or managed funds, including Titan, either manage or own
an aggregate of approximately $1.9 billion in Bank Debt.  In addition, certain affiliates of
BAMPIC and Titan collectively own interests in approximately $853,564,826 in First Lien
Swaps.  *Id*. at ¶ 5.

[4] Freedman Aff. ¶¶ 7, 9-14.

under that agreement, including adequate protection payments made to Titan as a secured creditor of TCEH. Indeed, the Intercreditor Agreement expressly grants secured creditors such as Titan the right to object to materially unequal treatment vis-à-vis other secured parties, which is exactly what Titan seeks to do here. Moreover, permitting Titan to intervene here will not cause undue delay or prejudice the substantial rights of any party. The litigation is in its early stages and no responsive pleading has even been filed. Accordingly, Titan respectfully requests that this Court grant this Motion to permit Titan to intervene as a defendant, as none of the parties to this action can adequately protect Titan's interests.

## STATEMENT OF FACTS

Titan presently holds $167,153,165 in principal amount of first lien Bank Debt.[5] This first lien Bank Debt was issued under a credit agreement executed in 2007 (as amended in 2013, the "Credit Agreement") with energy conglomerate TCEH and its parent Energy Future Competitive Holdings ("EFCH") (together with certain of TCEH's subsidiaries, the "TCEH Entities").[6] Titan was assigned the rights and obligations of a "Lender" under the Credit Agreement when it purchased Bank Debt under a separate Assignment and Acceptance Agreement executed in 2014. *See* Freedman Aff. ¶ 6; Berkovich Aff. ¶ 5.

Titan is just one of many holders of the Bank Debt, of which approximately $22.6 billion in principal amount is outstanding. Berkovich Aff. ¶ 3. The remainder of the First Lien Debt consists of approximately $1.75 billion in principal amount of First Lien Notes for which

---

[5] *See* Freedman Aff. ¶ 6.

[6] The TCEH Entities are currently debtors in the jointly-administered chapter 11 cases of Energy Future Holdings Corporation and certain of its subsidiaries, Case No. 14-10979 (CSS) currently pending in the United States Bankruptcy Court for the District of Delaware.

plaintiff Delaware Trust serves as indenture trustee, and approximately $1.23 billion[7] in principal amount owed to the First Lien Swapholders.  *Id*.  The relationship between and among the holders of the Bank Debt, the holders of the First Lien Notes, and the First Lien Swapholders (together, the "First Lien Creditors") is governed by the Collateral Agency and Intercreditor Agreement, which was executed in 2007 (as amended in 2009, the "Intercreditor Agreement"). *See* Berkovich Aff. Ex. B (Intercreditor Agreement).  Titan is bound to the Intercreditor Agreement under the express terms of the Credit Agreement, which provides that "[e]ach Lender . . . agrees that it will be bound by and will take no actions contrary to the provisions of the Intercreditor Agreement."  *See* Berkovich Aff. Ex. A (Credit Agreement), at § 12.2.  Because Titan is a "Lender" under the Credit Agreement, Titan is expressly bound to the Intercreditor Agreement—the very agreement that the Plaintiff is purportedly seeking to interpret and enforce.

The TCEH Entities filed for bankruptcy under chapter 11 on the Petition Date in the Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").  The TCEH Entities' chapter 11 cases remain pending.  The TCEH Entities (the "Debtors") subsequently sought the use of the First Lien Creditors' cash collateral to continue operating their businesses while reorganizing, and the Bankruptcy Court approved such request on a final basis in an order dated June 6, 2014 (the "Cash Collateral Order").[8]  To protect the First Lien Creditors from possible diminution in the value of their collateral and obtain their consent for the use of cash collateral,

---

[7] The approximate amount of the swap claim was calculated by adding the face amounts of the swap claims filed against the Debtors in the chapter 11 cases.  *See* Berkovich Aff. ¶ 3.

[8] *See* Berkovich Aff., Ex. F (Cash Collateral Order).

the Cash Collateral Order embodies the agreement of the Debtors to, *inter alia*, make certain adequate protection payments (the "Monthly Payments") to the First Lien Creditors.[9]

One of the First Lien Noteholders, Aurelius Capital Management LP ("Aurelius") objected to the Debtors' proposed method for calculating the allocation of the Monthly Payments among the First Lien Creditors.[10]  Specifically, Aurelius disagreed with the Debtors' proposed method for allocation, which would have allocated the Monthly Payments as among the First Lien Creditors in proportion to the fixed amounts of their respective first lien holdings owing as of the Petition Date.  Instead, Aurelius argued that, under the Intercreditor Agreement, the Monthly Payments should be allocated among the First Lien Creditors on a rolling basis and in a manner that takes into account the hypothetical accrual of postpetition interest under the various tranches of prepetition first lien debt (regardless of whether the First Lien Creditors would actually be able to maintain claims against the Debtors for such interest), with a recalculation each month to reflect each tranche's supposed variation in claim size.  *Id.*

When Aurelius raised this dispute (the "Intercreditor Dispute") during the hearing to approve the final Cash Collateral Order, the Bankruptcy Court Judge indicated that the Bankruptcy Court was not, at that time, "able to make a decision as to who's right about the intercreditor agreement", but suggested that the Intercreditor Dispute could be resolved either in the bankruptcy court or "somewhere else maybe":

---

[9] *See id.*

[10] *See* Berkovich Aff., Ex. F (Cash Collateral Order), at § 6(a).  Aurelius's objection to the allocations of the Monthly Payments is attached to the Berkovich Aff. as Exhibit D, *Aurelius Capital Management, LP's Limited Objection to the Motion of Texas Competitive Electric Holdings Company LLC and Certain of its Debtor Affiliates for Entry of Interim and Final Orders (A) Authorizing Use of Cash Collateral, (B) Granting Adequate Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing*, dated April 29, 2014.

THE COURT: You have a choice of law and choice of jurisdiction or a credit agreement, I'm sure.

MR. WEINTRAUB:  That's true, Your Honor.

THE COURT:  Go to New York State Court.

MR. WEINTRAUB: I think to a certain extent this is an issue that's going to flow through this case, unfortunately, because we see this as a precursor to how distributions might be made under a plan.  And we're going to fight that as well if there's going to be a deviation from the intercreditor agreement because that disadvantages all of the noteholders, Your Honor.  So hopefully –

THE COURT: And it may be – it may be that at – it may be at some point it would be appropriate for me to get involved in this.  And it may be I get involved in what is being set aside to be decided by a Court of competent jurisdiction. I'm not saying I won't do that. I don't want to be overly flip when I tell you to go to New York State Court.  That's just the fact that it's 5 o'clock.  But I can't deal with it in this context.  I have no way to deal with it.

Berkovich Aff., Ex. E (6/5/2014 H'ring Tr.), 224:24-25, 225:24-25, 231:22-24, 232:1-16.

Ultimately, Aurelius and certain of the Bank Debt holders agreed to table the issue for future resolution.  As part of this agreement, the Cash Collateral Order approved by the Bankruptcy Court provided that the Debtors would transfer the disputed amount of the Monthly Payments to an escrow account pending the resolution of the Intercreditor Dispute.  *See* Berkovich Aff. ¶ 12, Ex. F (Cash Collateral Order).  On March 13, 2015, the Delaware Trust initiated the action in New York state court (the "New York Action")—subsequently removed to this Court—against Wilmington Trust in its capacity as Collateral Agent and Administrative Agent, seeking to determine the appropriate methodology for calculating the distribution of payments to First Lien Creditors, including Titan.[11]  *See* Berkovich Aff. Ex. H (Complaint), Ex.

---

[11] The New York Action named Wilmington Trust and the Bank of New York Mellon Trust Company ("BONY") as defendants.  Pursuant to a court-approved stipulation executed by

K (Notice of Removal).  But the Administrative Agent is not a party with any real economic

stake in the subject payments at issue.  Further, the Administrative Agent cannot represent all of

Titan's interests because the Administrative Agent may only act upon direction of the majority of

the holders of Bank Debt under the Credit Agreement.  On March 20, 2015, the Administrative

Agent stated in a letter to the secured creditors that it intended to take no action with respect to

the Complaint—*i.e.*, that it would default—if not otherwise instructed and directed by a majority

of the Bank Debt holders by April 8, 2015.  *See* Berkovich Aff. Ex. I (Memorandum dated

March 20, 2015 from Administrative Agent to the First Lien Lenders), at § 4.

## ARGUMENT

### I.   TITAN'S MOTION TO INTERVENE SHOULD BE GRANTED EITHER AS OF RIGHT OR PERMISSIVELY

Federal courts have broad discretion to grant intervention under FRCP 24.  *See, e.g.,*

*Tachiona ex. Rel. Tachiona v. Mugabe*, 186 F. Supp. 2d 383, 394 (S.D.N.Y. 2002) (noting the

"flexible and discretionary" framework under FRCP 24(a)(2)); *Louis Berger Group, Inc. v. State*

*Bank of India*, 802 F. Supp. 2d 482, 488 (S.D.N.Y. 2011) ("A district court has broad discretion

in deciding whether to grant permissive intervention" under FRCP 24(b)); *see also In re Macrose*

*Industries Corp.*, 186 B.R. 789, 798 (E.D.N.Y. 1995) ("Rule 24(a)(2) should be interpreted

practically to allow courts to reach pragmatic solutions"); 7C Charles Alan Wright & Arthur R.

Miller, Fed. Prac. & Proc. Civ. § 1904 (3d ed.) ("It frequently has been said of Rule 24, as it is of

the Civil Rules generally, that it is to be given a liberal construction").  Here, Titan's Motion

satisfies the requirements for both intervention as of right under FRCP 24(a) and permissive

intervention under FRCP 24(b).

---

Delaware Trust and BONY on April 13, 2015, BONY was dismissed without prejudice from the
New York Action.

**A.      Titan is Entitled to Intervention as of Right Under FRCP 24(a)(2)**

FRCP 24(a)(2) provides upon timely motion,[12] intervention shall be granted as of right where the party seeking to intervene "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."   Titan clearly meets this standard because: (1) the action involves a disposition of Titan's property; (2) the Court's judgment may impair Titan's ability to protect its interest in this property; and (3) no existing party in the action adequately represents Titan's interests in the disposition of its property.

**1.      Titan has a Direct, Substantial, and Legally Protectable Interest in the Subject Matter of This Action.**

Under FRCP 24(a)(2), a party will be permitted to intervene when it claims an interest relating to the property or transaction which is the subject matter of the action.  Such an interest should be "direct, substantial, and legally protectable."  *Brennan v. N.Y.C. Bd. of Educ.*, 260 F.3d 123, 129 (2d Cir. 2001) (citation omitted); *see also Export-Import Bank of the Repub. Of China v. Grenada*, No. 13 Civ. 1450, 2013 WL 4414875, at *5 (S.D.N.Y. Aug. 19, 2013) (concluding that intervenor had a substantial interest in suit where the action would constrain payments made to proposed intervenors).

---

[12] Titan submits this Motion in accordance with the Court's order at the April 20, 2015 hearing. *See* Berkovich Aff. Ex. L (Order, dated April 20, 2015).  Further, there can be no dispute that Titan's intervention request in the New York Action was timely.  No responsive pleading has been filed, and Titan's intervention will not unduly delay the action or otherwise prejudice the parties to the suit.  *See In re Tribune Co. Fraudulent Conveyance Litig.*, 291 F.R.D. 38, 41–2 (S.D.N.Y. 2013) (holding motion to intervene was timely despite months-long delay where parties were on notice of intervenor's interests and under the circumstances, intervenors could not be said to have "slept on their rights"); *Home Ins. Co. v. Liberty Mut. Ins. Co.*, No. 87 Civ. 0675 (SWK), 1990 WL 188925, at *2 (S.D.N.Y. Nov. 20, 1990) ("Absent any significant prejudice to the existing parties, courts usually consider an application for intervention as timely").

As Plaintiff acknowledges, this action relates to the disposition of monies held in escrow, on behalf of all First Lien Creditors.  *See* Berkovich Aff. Ex. H (Complaint), at ¶¶ 5-7.  As a party with a direct and substantial interest in the monies held in escrow, Titan is entitled to intervene in the action as of right under FRCP 24(a)(2).  *See, e.g., E. Potato Dealers, Inc. v. TNC Packing Corp.*, No. 08-CV-6280 (CJS), 2011 WL 2669632, at *11 (W.D.N.Y. July 6, 2011) (granting motion to intervene as of right based on intervenors' interests in escrowed funds); *Peterson v. Islamic Republic of Iran*, 290 F.R.D. 54, 59–60 (S.D.N.Y. 2013) (holding intervenors' claimed interest in disposition of funds was sufficient for purposes of FRCP 24(a)(2) where intervenors held unsatisfied default judgment that they sought to execute against funds at issue in suit); *In re Bear Stearns Companies, Inc. Securities, Derivative, and Erisa Litigation*, 297 F.R.D. 90, 97 (S.D.N.Y. 2013) (stockholder and class member's interest in funds to be distributed from securities class action settlement was sufficient under FRCP 24(a)(2)). Indeed, the Intercreditor Agreement grants First Lien Creditors, such as Titan, the legal right to object to the terms of adequate protection granted to the secured parties in connection with the use of cash collateral if its rights are materially affected, which is exactly what is happening here. *See* Berkovich Aff. Ex. B (Intercreditor Agreement), at § 6.1 (each "Secured Party retains the right to object to [the] use of Cash Collateral or to the granting of any priming liens over any Collateral if the terms thereof, including the terms of adequate protection (if any) granted to the Secured Parties in connection therewith, do not provide for materially equal treatment to all Secured Parties.").  The Cash Collateral Order preserved all rights that the First Lien Creditors had to object to the terms of adequate protection.  *See* Berkovich Aff. Ex. F (Cash Collateral Order), at § 6(a) ("Notwithstanding anything to the contrary herein, all rights and claims of the TCEH Debtors and the Prepetition First Lien Creditors with respect to whether the First Lien

Adequate Protection Payments should be allocated pursuant to the Petition Date Allocation Calculation or the Postpetition Interest Allocation Calculation are expressly reserved.").  Both the Intercreditor Agreement and Cash Collateral Order confirm that this action implicates the disposition of property in which Titan has a "direct, substantial, and legally protectable" interest. *Brennan*, 260 F.3d at 129.

### 2. Titan's Ability to Protect Its Interests May Be Impaired By An Adverse Judgment

Under Rule 24(a)(2), a proposed intervenor need only show that the disposition of the action "may as a practical matter impair or impede" the interest asserted.  *Home Ins. Co.*, 1990 WL 188925, at *5.  Further, the impairment need not be "substantial," and the potential stare decisis effect of an adverse ruling can be sufficient.  *Id.*

Here, Titan's ability to protect its property interests may be impaired by an adverse judgment in this action.  Plaintiff's complaint concerns Titan's ownership interests in escrowed funds and interpretation of the Intercreditor Agreement in which secured creditors, such as Titan, are designated as beneficiaries.  *See, e.g.,* Berkovich Aff. Ex. B (Intercreditor Agreement), at § 9.16 (specifying that "[t]his Agreement and the rights and benefits hereof . . . shall insure to the benefit of each of the Secured Parties"); *see also Edge Mgmt. Consulting, Inc. v. Blank*, 807 N.Y.S.2d 353, 358 (1st Dep't 2006) (in determining whether a third party was an intended beneficiary to the contract, the best evidence is the language of the contract).  Even if Titan were not a beneficiary, Titan would be adversely affected because Plaintiff seeks specific performance to effectuate the requested declaratory judgment.  *See, e.g. In re Oceana Int'l, Inc.*, 49 F.R.D. 329, 332 (S.D.N.Y. 1969) (property interest could be impaired absent intervention due to potential declaratory judgment); *see also Home Ins. Co.*, 1990 WL 188925, at *5.  Indeed, the Administrative Agent has confirmed that the action may affect "each of the Secured Parties'

rights…."  *See* Berkovich Aff. Ex. I (Memorandum dated March 20, 2015 from Administrative Agent to the First Lien Lenders), at § 4.  Further, as discussed above, Titan will be adversely impacted if the Aurelius formulation is adopted because it owns substantially more Non-Extended Bank Debt than Extended Bank Debt.  Thus, there is a risk that any judgment would be binding on Titan and an adverse decision could therefore impair Titan's ability to recover for any wrongful distribution of payments owed to Titan.  *See In re Bear Sterns*, 297 F.R.D. at 97 ("If the Court were to decline to intervene, Cancan's interest would be extinguished for no compensation, which would eliminate Cancan's ability to protect its interest").

### 3.  The Named Parties Do Not Adequately Represent Titan's Interests

Finally, the existing parties may not adequately represent Titan's interests in the action as required to obviate the need for intervention under FRCP 24(a)(2).

FRCP 24(a)(2)'s requirement that the proposed intervenor have an interest not otherwise adequately protected "is satisfied if the applicant shows that representation of his or her interest ***may be*** inadequate; and the burden of making that showing should be treated as minimal."  *Dow Jones & Co., Inc. v. U.S. Dept. of Justice*, 161 F.R.D. 247, 254 (S.D.N.Y. 1995) (internal quotation marks omitted) (emphasis added) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 540, 92 S. Ct. 630, 637 n. 10 (1972)); *see also In re Pandora Media, Inc.*, Nos. 12 Civ. 8035, 41 Civ. 1395, 2013 WL 6569872, at *9 (S.D.N.Y. Dec. 13, 2013) ("Because a party must carry only a 'minimal' burden to demonstrate inadequate representation, the uncertainty here— even if minor—suggests that intervention is proper").[13]  Titan easily meets this standard.  The

---

[13] Notably, courts in the Southern District have held that after the 1966 amendments to FRCP 24, the burden of persuasion to demonstrate the adequacy of representation in fact falls on the party opposing intervention.  *See New England Petroleum Corp. v. Federal Energy Administration*, 71 F.R.D. 454, 458 (S.D.N.Y. 1976); *CBS Inc. v. Snyder*, 136 F.R.D. 364, 368 (S.D.N.Y. 1991). Under either standard, it is clear that Titan's interests may not be adequately represented by the

Administrative Agent and Titan's interests are not necessarily coextensive since the Administrative Agent must take direction from a majority of the holders of Bank Debt, who may or may not have interests aligned with Titan.[14]  Indeed, the named defendant to the action—the Administrative Agent—is not the party with any real economic stake in the subject payments at issue.  Titan disagrees with the allocation of Monthly Payments proposed by Plaintiff Delaware Trust, and may be at odds with any position taken by other Bank Debt holders or the Administrative Agent.  *See* Freedman Aff. ¶¶ 11-14.  Unless Titan is permitted to intervene, it may be subject to an adverse judgment without having the ability to adequately represent itself.

Further, a proposed intervenor's interests are deemed not to be adequately represented when different from or adverse to the interests of the parties to the litigation.  *See Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 872 F. Supp. 870, 875 (S.D.N.Y. 1991).  This is true even where the intervenor and a party to the case share a similar objective in the case so long as the intervenor has some interests in the litigation which are not shared by existing parties.  *See Dixon v. Heckler*, 589 F. Supp. 1512, 1516 (S.D.N.Y. 1984) ("although the State shares a similar objective to that of the plaintiffs—namely, to enjoin the Secretary's use of the severity regulation—the State has some interests in the litigation which are not shared by plaintiffs, and which therefore are not adequately represented by existing parties.") (internal quotation marks omitted).

---

parties in the suit, but for the sake of completeness, and without assuming any undue burden, Titan sets forth its affirmative reasons as to why this prong of FRCP 24(a) is satisfied.

[14] As discussed, Titan believes that the majority of First Lien Creditors will not have interests aligned with Titan, given that Titan owns substantially more Non-Extended Bank Debt than Extended Bank Debt and would therefore be harmed by the adoption of the Aurelius-advocated interpretation, as compared to other Bank Debt holders who hold significantly more Extended Bank Debt.  *See* Freedman Aff. ¶¶ 11-14.

Here, the interests of the other Bank Debt holders may diverge at some future date from those of Titan in light of the different rates of interest payable to different Bank Debt holders under the Credit Agreement. Specifically, the Bank Debt that matured in 2014 (the "Non-Extended Bank Debt") had a lower interest rate than that applicable to the Bank Debt that matured in 2017 (the "Extended Bank Debt"). The difference is approximately 1% annually. *See* Freedman Aff. ¶ 7. Under certain scenarios and assumptions, the Extended Bank Debt could benefit if the formulation advocated by Aurelius were adopted while the Non-Extended Bank Debt would be harmed. *Id.* at ¶ 12. Titan holds substantially more Non-Extended Bank Debt than Extended Bank Debt and could therefore be harmed by the adoption of the Aurelius-advocated interpretation. *Id.* at ¶ 13. As there is significantly more Extended Bank Debt than Non-Extended Bank Debt, if a majority of the holders of Bank Debt directed the Administrative Agent to take a position advantageous to the holders of Extended Bank Debt, the holders of the Non-Extended Bank Debt could be prejudiced if they were unable to advocate their position in the litigation. *Id.* at ¶¶ 8, 12. Because of the differences in the Non-Extended Bank Debt and Extended Bank Debt with respect to the issue at hand, the Administrative Agent cannot adequately represent the interests of all of the Bank Debt holders, in particular the Non-Extended Bank Debt holders such as Titan. *See Brooks v. Sussex County State Bank*, 167 F.R.D. 347, 352 (N.D.N.Y. 1996) (where plaintiff and intervenor sought same funds from defendant bank, intervenor's interests were not adequately protected by either party since the plaintiff's interests were "clearly adverse" and the defendant bank was "indifferent" as to which claimant ultimately acquired the funds at issue). Thus, no other party has the ability or right to represent all of Titan's interest in the outcome of this action, and Titan has clearly met its minimal burden to show that the representation of Titan's interest by the current parties "may be" inadequate.

Accordingly, Titan respectfully requests that this Court grant this Motion to permit Titan to intervene as a defendant as a matter of right.

### B.   The Court Should Grant Titan Permissive Intervention Under FRCP 24(b)(1)(B)

In addition to satisfying the requirements for intervention as of right, in the alternative, this Court can and should exercise its discretion to allow permissive intervention.  FRCP 24(b) provides:  "On timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact."  Rule 24(b) further provides that, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

As set forth above, Titan's interests in the propriety of the distribution of Monthly Payments to Titan and Titan's contractual rights under the Intercreditor Agreement share common questions of law and fact with the underlying action, and allowing Titan to intervene would not cause any undue delay or prejudice to the parties or the Court.  Accordingly, Titan meets FRCP 24(b)'s requirements for permissive intervention.

### 1.   Titan's Interests Share Common Questions of Law and Fact with the Issues in the Action

A district court's discretion in deciding whether to grant permissive intervention under FRCP 24(b) is "very broad," *Dow Jones*, 161 F.R.D. at 254, and the Rule is to be construed liberally.  *See German v. Federal Home Loan Mortg. Corp.*, 899 F. Supp. 1155, 1166 (S.D.N.Y. 1995); *Clarkson v. Coughlin*, 145 F.R.D. 339, 343 (S.D.N.Y. 1993).

While Rule 24(b) states that the court may permit intervention where there is "a claim or defense that shares with the main action a common question of law or fact," it is well settled that, in considering a motion to intervene, "'the words claim or defense are not to be read in a

14

technical sense, but only require some interest on the part of the applicant.'" *Louis Berger Grp., Inc.*, 802 F. Supp. 2d at 488 (quoting *Dow Jones*, 161 F.R.D. at 254).  In this regard, "permissive intervention is also appropriate where the applicant's interest will be finally determined by the suit." *Dow Jones*, 161 F.R.D. at 254.  As set forth above, Titan has a direct, substantial, and legally protectable interest in this proceeding.   This action concerns the propriety of the distribution of Monthly Payments to Titan and Titan's contractual rights under the Intercreditor Agreement.  The Bankruptcy Court has already determined that the First Lien Creditors, such as Titan, have an interest in the Intercreditor Dispute, which is why the disputed amounts were escrowed pending its resolution.  *See* Berkovich Aff. Ex. F (Cash Collateral Order), at § 6(a) (expressly reserving all rights and claims of the first lien creditors as to which calculation methodology would apply to the protection payments).   Indeed, courts have permitted intervention pursuant to Rule 24(b)(1)(B) where, as here, the intervenors asserted "an interest in a portion of the escrow fund at issue." *Tide Nat. Gas Storage I, L.P. v. Falcon Gas Storage Co.*, No. 10 CV 5821, 2012 U.S. Dist. LEXIS 188864, at *5 (S.D.N.Y. Aug. 7, 2012).

Titan's claims and defenses—that is, its direct and substantial interests in this action—clearly "share[] with the main action . . . common question[s] of law or fact."  FRCP 24(b); *see also New York v. Abraham*, 204 F.R.D. 62, 66 (S.D.N.Y. 2001) (permitting intervention where the intervenor's proposed defense had issue of law in common with main action).  As established above, this Court's interpretation of the Intercreditor Agreement may impact Titan's rights under that agreement, including adequate protection payments made to Titan as a secured creditor of TCEH.  Further, Titan's claims and defenses necessarily share common questions of fact, since they involve the same agreement.  Indeed, in exercising its discretion to permit intervention, a court should consider "'whether parties seeking intervention will significantly contribute to the

15

full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *Schiller v. City of New York*, No. 04 Civ. 7922 (KMK)(JC), No. 04 Civ. 7921 (KMK)(JC), 2006 WL 2788256, at *2 (S.D.N.Y. Sept. 27, 2006) (quoting *H.L. Hayden Co. of New York, Inc. v. Siemens Medical Systems, Inc.,* 797 F.2d 85, 89 (2d Cir.1986)); *see also Int'l Design Concepts, LLC v. Saks Inc.*, 486 F. Supp. 2d 229, 235 (S.D.N.Y. 2007) (permitting intervention where the proposed intervenor's "entrance will contribute to the full development of factual issues as well as efficient adjudication of all parties' interests"); *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 457, 468 (S.D.N.Y. 2000) ("Rule 24(b) also vests broad discretion in the district court to determine the fairest and most efficient manner of handling a case with multiple parties and claims.").

Here, allowing First Lien Creditors like Titan to intervene will contribute to the full development of the factual record and allow for the efficient administration of this proceeding. The Court should therefore exercise its discretion and permit intervention here. *See, e.g.*, *S.E.C. v. Credit Bancorp, Ltd.*, 124 F. Supp. 2d 824, 826 (S.D.N.Y. 2000) (permitting intervention to allow intervenor to protect its alleged security interest in stock held in the frozen account that was the subject of the main action).

### 2. Intervention Will Not Unduly Delay The Proceedings Or Prejudice Substantive Rights Of Existing Parties

Permitting Titan to intervene will not cause either undue delay or prejudice to the substantive rights of any party.  As set forth *supra* at p. 8, no responsive pleading has been filed, and Titan's intervention will not unduly delay the action or otherwise prejudice the parties to the suit.  This militates in favor of granting the Motion.  *See* 7C Wright & Miller, Federal Practice & Procedure: Civil § 1913 (2d ed. 1986) (stating that the absence of any prejudice to the parties "serves to encourage the court to exercise its discretion to allow intervention").

16

**CONCLUSION**

For the above reasons, Titan's Motion to Intervene in these proceedings should be granted.


Dated: New York, New York
April 24, 2015                                  /s/ *Salvatore Romanello*
                                               Salvatore Romanello, Esq.
                                               Ronit Berkovich, Esq.
                                               WEIL, GOTSHAL & MANGES LLP
                                               767 Fifth Avenue
                                               New York, New York 10153
                                               (212) 310-8000
                                               Attorneys for Proposed Intervenor-Defendant Titan
                                               Investment Holdings LP

17