UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DELAWARE TRUST COMPANY, as TCEH
First Lien Indenture Trustee,

       Plaintiff,

   -against-           Case No. 1:15-cv-02883-PAE

WILMINGTON TRUST, N.A., as First Lien
Collateral Agent and First Lien Administrative
Agent,

       Defendant.
-----------------------------------------------------------------x

## AFFIRMATION OF JOE FREEDMAN IN SUPPORT OF TITAN INVESTMENT HOLDINGS LP'S MOTION TO INTERVENE

I, Joe Freedman, affirm, under penalty of perjury, that the following is true and correct:

1. I am a Senior Managing Partner and Counsel of Brookfield's Private Equity and Finance Group. As part of my responsibilities in that capacity, at Brookfield, I have personal knowledge as to the financial holdings of Brookfield's affiliates, including Brookfield Asset Management Private Institutional Capital Adviser, LP ("BAMPIC") and Titan Investment Holdings LP ("Titan"). All matters herein are true to my own knowledge, except as to any matters stated to be alleged upon information and belief, which are matters I believe to be true.

2. I make this affirmation in support of Titan's Motion to Intervene as a defendant in the above-captioned action (the "Action").

3. Texas Competitive Electric Holdings ("TCEH"), together with its affiliates and its ultimate parent, Energy Future Holdings, Inc., filed for bankruptcy under chapter 11 in

1

the United States Bankruptcy Court for the District of Delaware on April 29, 2014 (the "Petition Date")

4. In my understanding, as of the Petition Date, TCEH had a total of approximately $25.6 billion in principal amount of first lien debt ("First Lien Debt") including approximately (i) $22.6 billion of term loan and revolving loan debt outstanding under a credit agreement (the "Bank Debt") for which Wilmington Trust, N.A. (the "Administrative Agent") serves as successor administrative agent; (ii) $1.75 billion in 11.50% senior secured notes (the "First Lien Notes"), for which plaintiff Delaware Trust serves as indenture trustee; and (iii) $1.23 billion of debt outstanding under first lien interest rate swap agreements (the "First Lien Swaps").

5. BAMPIC and certain of its affiliated or managed funds, including Titan, either manage or own an aggregate of approximately $1.9 billion in Bank Debt. In addition, certain affiliates of BAMPIC and Titan collectively own interests in approximately $853,564,826.00 in First Lien Swaps. The First Lien Swaps are not the subject of Titan's order to show cause to intervene.

6. Titan presently holds $167,153,165.00 in principal amount of first lien Bank Debt, plus accrued and unpaid interest. This first lien Bank Debt was issued under a certain credit agreement executed in 2007 (as amended in 2013, the "Credit Agreement") with TCEH, and its parent Energy Future Competitive Holdings ("EFCH") (together with certain of TCEH's subsidiaries, referred to collectively herein as the "TCEH Entities"). Titan was assigned the rights and obligations of a "Lender" under the Credit Agreement when it purchased Bank Debt under a separate Assignment and Acceptance Agreement executed in 2014.

7. The Bank Debt has two tranches. The Bank Debt with a maturity date in 2014 (the "Non-Extended Bank Debt") has a lower interest rate than the Bank Debt with a maturity date in 2017 (the "Extended Bank Debt"). The difference is approximately one percent (1%) annually.

8. It is my understanding that there is significantly more Extended Bank Debt than Non-Extended Bank Debt.

9. Titan holds substantially more Non-Extended Bank Debt than Extended Bank Debt.

10. After the TCEH Entities filed for bankruptcy, the TCEH Entities (the "Debtors") sought the use of the cash collateral of the holders of the Bank Debt, First Lien Notes, and the First Lien Swaps (collectively, the "First Lien Creditors") to continue operating their businesses while reorganizing, and the Bankruptcy Court approved such request on a final basis in an order dated June 6, 2014 (the "Cash Collateral Order"). To protect the First Lien Creditors from possible diminution in the value of their collateral and obtain their consent for the use of cash collateral, the Cash Collateral Order embodies the agreement of the Debtors to, *inter alia*, make certain adequate protection payments (the "Monthly Payments") to the Administrative Agent on behalf of the holders of the Bank Debt, Delaware Trust Company on behalf of the First Lien Notes, and the First Lien Swaps. The Debtors' proposed method for calculating the allocation would allocate the Monthly Payments as among the First Lien Creditors in proportion to the fixed amounts of their respective first lien holdings owing as of the Petition Date (the "Petition Date Calculation").

11. Plaintiff Delaware Trust Company commenced this Action asserting, among other things, that the proper methodology to be applied for the allocation of the Monthly Payments is a

3

Postpetition Interest Allocation Calculation—a calculation under which the Monthly Payments would be allocated among the First Lien Creditors on a rolling basis and in a manner that takes into account the hypothetical accrual of postpetition interest under the various tranches of prepetition first lien debt (regardless of whether the First Lien Creditors would actually be able to maintain claims against the Debtors for such interest), with a recalculation each month to reflect each tranche's supposed variation in claim size.

12. Under certain scenarios and assumptions, the Extended Bank Debt would benefit while the Non-Extended Bank Debt would be harmed if the Postpetition Interest Allocation Calculation were adopted.

13. Titan holds substantially more Non-Extended Bank Debt than Extended Bank Debt and therefore could be harmed by the adoption of the Plaintiff's proposed Postpetition Interest Allocation Calculation.

14. Upon information and belief, other First Lien Creditors hold varying proportions of Extended Bank Debt, Non-Extended Bank Debt, First Lien Notes, or First Lien Swaps. Thus, Titan may be at odds with positions in this Action taken by other holders of first lien secured debt or by the Administrative Agent.

Pursuant to 28 U.S.C. § 1746, I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 23, 2015.

                                                             JOE FREEDMAN