UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DELAWARE TRUST COMPANY, as TCEH
First Lien Indenture Trustee,

                                        Plaintiff,

                    -against-

WILMINGTON TRUST, N.A., as First Lien
Collateral Agent and First Lien
Administrative Agent,

                                        Defendant.

---

Electronically Filed

Case No. 15-cv-02883 (PAE) (FM)

---

## MEMORANDUM OF LAW IN SUPPORT OF THE JOINT MOTION TO INTERVENE OF MORGAN STANLEY CAPITAL GROUP INC. AND J. ARON & COMPANY

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, NY 10006
Telephone: (212) 225-2000
Facsimile:  (212) 225-3999

*Attorneys for Proposed Intervenor*
*J. Aron & Company*

CADWALADER, WICKERSHAM &
TAFT LLP
One World Financial Center
New York, NY 10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666

*Attorneys for Proposed Intervenor*
*Morgan Stanley Capital Group Inc.*

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .......................................................................................................... ii

SUMMARY OF ARGUMENT ......................................................................................................1

BACKGROUND ...........................................................................................................................1

ARGUMENT ................................................................................................................................6

I.      The Secured Swap Providers Are Entitled To Intervene As Of Right Pursuant To
        Rule 24(a)(2) ......................................................................................................................7

II.     In The Alternative, The Secured Swap Providers Should Be Granted Permissive
        Intervention Pursuant To Rule 24(b)(1)(B) ...................................................................11

CONCLUSION ..........................................................................................................................14

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

<u>CASES:</u>

Brennan v. N.Y.C. Bd. of Educ.,
    260 F.3d 123 (2d Cir. 2001)..................................................................6, 8

Bridgeport Guardians, Inc. v. Delmonte,
    602 F.3d 469 (2d Cir. 2010)...............................................................8-9

Degrafinreid v. Ricks,
    417 F. Supp. 2d 403 (S.D.N.Y. 2006)..............................................7, 11

E. Potato Dealers, Inc. v. TNC Packing Corp.,
    No. 08-CV-6280 CJS, 2011 WL 2669632 (W.D.N.Y. July 6, 2011)......................8

Export-Import Bank of Repub. of China v. Grenada,
    No. 13 Civ. 1450, 2013 WL 4414875 (S.D.N.Y. Aug. 19, 2013)...........................8

Hartford Fire Ins. Co. v. Mitlof,
    193 F.R.D. 154 (S.D.N.Y. 2000)......................................................9, 10

In re Pandora Media, Inc.,
    Nos. 12 Civ. 8035, 41 Civ. 1395, 2013 WL 6569872 (S.D.N.Y. Dec. 13, 2013)..................10

In re Tribune Co. Fraudulent Conveyance Litig.,
    291 F.R.D. 38 (S.D.N.Y. 2013)......................................................7-8

In re U.S. Lines, Inc.,
    169 B.R. 804 (Bankr. S.D.N.Y. 1994),
    <u>rev'd on other grounds</u>, 220 B.R. 5 (S.D.N.Y. 1997),
    <u>rev'd on other grounds</u>, 197 F.3d 631 (2d Cir. 1999)...............................................9

Jakubik v. Schmirer,
    No. 13 Civ. 4087, 2013 WL 3465857 (S.D.N.Y. July 9, 2013) (Engelmayer, J.)............6, 8, 9

McNeill v. N.Y.C. Hous. Auth.,
    719 F. Supp. 233 (S.D.N.Y. 1989)......................................................11

Md. Cas. Co. v. W.R. Grace & Co.,
    No. 88 Civ. 4337, 1996 WL 34154 (S.D.N.Y. Jan. 30, 1996)................................9

Restor-A-Dent Dental Labs, Inc. v. Certified Alloy Prods., Inc.,
    725 F.2d 871 (2d Cir. 1984)......................................................7

**PAGE(S)**

St. John's Univ., N.Y. v. Bolton,
  450 F. App'x 81 (2d Cir. 2011) (Summary Order).....................................................................7

Techcap. Corp. v. Amoco Corp.,
  No. 99 Civ. 5093, 2001 WL 267010 (S.D.N.Y. Mar. 19, 2001) .......................................7, 11

Tide Nat. Gas Storage I, L.P. v. Falcon Gas Storage Co.,
  No. 10 CV 5821, 2012 U.S. Dist. LEXIS 188864 (S.D.N.Y. Aug. 7, 2012).................... 11-12

TIG Ins. Co. v. Huber,
  No. 3:04-CV-646, 2005 WL 806714, at *3 (D. Conn. Apr. 5, 2005).......................................9

Trbovich v. United Mine Workers of Am.,
  404 U.S. 528 (1972)........................................................................................................... 9-10

Williston v. Feliz,
  No. 04 Civ. 4454, 2005 WL 1669008 (S.D.N.Y. July 14, 2005) ...........................................11

Windsor v. U.S.,
  797 F. Supp. 2d 320 (S.D.N.Y. 2011).....................................................................................10

**STATUTES & OTHER AUTHORITIES:**

Fed. R. Civ. P.:
  24(a)(2) .....................................................................................................................................7
  24(b)(1)(B).................................................................................................................................11

Proposed intervenors Morgan Stanley Capital Group Inc. ("MSCG") and J. Aron & Company ("J. Aron") (together, the "Secured Swap Providers") respectfully submit this memorandum of law in support of their joint motion to intervene in this action pursuant to Rules 24(a)(2) and 24(b)(1)(B) of the Federal Rules of Civil Procedure.

## SUMMARY OF ARGUMENT

The Secured Swap Providers have a direct economic stake in the outcome of this case.  If Plaintiff prevails on its claims, adequate protection payments from Chapter 11 Debtor Texas Competitive Electric Holdings Company LLC will be disproportionately allocated to other secured parties and away from the Secured Swap Providers.  Thus, the Plaintiff is seeking to benefit other secured parties directly at the Secured Swap Providers' expense.  Wilmington Trust, the Collateral Agent and the named defendant, has sent written notice to all secured parties that it will not take any position in the litigation.  Accordingly, the Secured Swap Providers have been forced to intervene pursuant to Rules 24(a)(2) and 24(b)(1)(B) to protect their unique interests.  These interests are not being represented by any other party in the case.  Under the circumstances, intervention is both necessary and appropriate.[1]

## BACKGROUND

On April 29, 2014 (the "Petition Date"), the Texas Competitive Electric Holdings Company LLC, and certain of its affiliates (the "Debtors") filed voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., in the United States Bankruptcy Court for the District of Delaware (the "Chapter 11 Cases").  The Chapter 11 Cases

---

[1]   Pursuant to Rule 24(c), MSCG's Proposed Answer To The Complaint, is attached as Exhibit K to the Declaration of Ellen M. Halstead In Support of Motion to Intervene (the "Halstead Declaration" or "Halstead Decl."), dated April 24, 2015, and J. Aron's Proposed Answer To The Complaint is attached as Exhibit A to the Declaration of Zoe E. Shea (the "Shea Declaration"), dated April 24, 2015.  The Secured Swap Providers reserve the right to file a motion to dismiss the complaint.

are being jointly administered as <u>In re Energy Future Holdings Corp.</u>, Case No. 14-10979 (CSS) (Bankr. D. Del.).

        As of the Petition Date, the Debtors represented that they had over $25 billion of first lien debt, including (i) $22 billion of debt outstanding under a credit agreement (the "Bank Debt," and holders of such Bank Debt, the "Lenders"), with defendant Wilmington Trust, N.A. ("Wilmington Trust") as successor administrative agent (the "Administrative Agent"); (ii) $1.75 billion of debt outstanding under a first lien indenture (the "First Lien Notes" and the holders of such First Lien Notes, the "First Lien Noteholders"); and (iii) approximately $1.255 billion of debt outstanding under first lien interest rate swap and commodity hedge agreements, including the amounts owed to the Secured Swap Providers, as of April 11, 2014.  <u>See</u> Halstead Decl., Ex. D at 30-31, 93 n.61.  The Secured Swap Providers have since timely filed proofs of claim in the Chapter 11 Cases against the Debtors with respect to their respective first lien swap claims and the obligations due thereunder.  <u>See</u> Halstead Decl. ¶¶ 10-12.  MSCG's secured claims total no less than $230,175,216.93.  <u>See</u> Halstead Decl., Ex. E at 5.  J. Aron's secured claims total no less than $953,564,826.00 as of the petition date.  <u>See</u> Halstead Decl., Ex. F at 6.  Both claims are secured by a first-priority lien on substantially all of the Debtors' assets and rank *pari passu* with the Debtors' other first lien obligations (collectively, the "First Lien Obligations").  <u>See</u> Halstead Decl. ¶ 10.

        The Secured Swap Providers, the Debtors, Plaintiff and Defendant Wilmington Trust are parties to the amended and restated collateral agency and intercreditor agreement, as amended and restated as of August 7, 2009 (the "Intercreditor Agreement").  <u>See</u> Halstead Decl., Ex. B.  Defendant Wilmington Trust is the successor collateral agent (the "Collateral Agent") under the Intercreditor Agreement.  <u>See</u> Halstead Decl., Ex. A ¶ 10; Halstead Decl., Ex. B at 32-33.  As Collateral Agent, Wilmington Trust acts for all first lien secured creditors.  However,

Wilmington Trust's mandate as Administrative Agent extends only to the Lenders.  It does not act as Administrative Agent for the Secured Swap Providers.

On June 6, 2014, the Bankruptcy Court entered a Final Order (A) Authorizing Use Of Cash Collateral, (B) Granting Adequate Protection, And (C) Modifying The Automatic Stay (the "Cash Collateral Order").  See Halstead Decl., Ex. C.  Pursuant to the Cash Collateral Order, the Secured Swap Providers:

> [R]eceive from the TCEH Debtors their ratable share (calculated based on the proportion that the Prepetition First Lien Obligations owing as of the Petition Date under each of the Prepetition First Lien Documents bears to the aggregate amount of all Prepetition First Lien Obligations owing as of the Petition Date) of the aggregate amount of the First Lien Adequate Protection Payments.[2]

Id. at 27-28, 32.  The Cash Collateral Order further states that "[t]he TCEH Debtors will pay First Lien Adequate Protection Payments to Swap Counterparties on account of such Swap Counterparties' terminated First Lien Interest Rate Swaps based on claims owing as of the Petition Date in the amount of $1,234,868,735 in the aggregate."  Id. at 29.  In addition, the Cash Collateral Order provides: "All parties reserve all rights, claims, and defenses with respect to the amount of such claims, including the right to object to the amount of such claims and to assert additional or different amounts at any time."  Id.

The monthly adequate protection payments compensate for the diminution in value of the Secured Swap Providers' cash collateral in an amount equal to LIBOR plus 450 basis points.  See Halstead Decl., Ex. C at 27.  Since the entry of the Cash Collateral Order, MSCG has received adequate protection payments directly from the Debtors ranging from $788,926.93 to $992,230.58 monthly and J. Aron has received variable monthly payments

---

[2]   This calculation is defined in the Cash Collateral Order and referred to herein as the "Petition Date Allocation Calculation."

ranging from $3,404,811 to $4,135,760.  Further, a portion of each of MSCG's and J. Aron's pro rata share is currently being held in an escrow account at Bank of New York Mellon Trust Company, N.A. ("BONY") in an amount equal to the difference between the Petition Date Allocation Calculation and the amounts that would otherwise be payable if post-petition interest was included in the calculations of each first lien creditor's pro rata share (the "Post-Petition Interest Allocation Calculation," and such escrowed amounts, the "Holdback Amounts").  See id. at 32-33.

The Holdback Amounts are held in an escrow account (the "Escrow Account") pursuant to the requirements of the Cash Collateral Order.  See Halstead Decl., Ex. C at 33.  As required by the Cash Collateral Order, Texas Competitive Electric Holdings Company LLC and BONY, as escrow agent, entered into an escrow agreement as of July 31, 2014 (the "Escrow Agreement"), which Plaintiff approved and signed.  See Halstead Ex. G at 1, 11.  The Escrow Agreement provides that actions concerning the Escrow Agreement "shall be brought in the [Bankruptcy] Court to the extent such court has, and agrees to exercise, jurisdiction, or, if the [Bankruptcy] Court does not have or refuses to exercise such jurisdiction, courts located within the City and State of New York" (id. at 8), and further provides that upon a final order from the Bankruptcy Court or another court of competent jurisdiction, the Holdback Amounts shall be distributed "to the First Lien Administrative Agent, First Lien Notes Trustee, each Hedge Counterparty and/or Swap Counterparty" pursuant to the terms of such order.  See id. at 3.

On March 13, 2015—nearly a year after the entry of the Cash Collateral Order—Plaintiff Delaware Trust Company, as indenture trustee for the First Lien Notes, commenced this action in New York Supreme Court, Commercial Division (the "State Court").  See Halstead Decl., Ex. A.  Plaintiff named as a defendant Wilmington Trust, in its capacities as Collateral

Agent and Administrative Agent.[3]  See Halstead Decl., Ex. A ¶ 10.  Plaintiff seeks a declaration that all past and future monthly adequate protection payments should be allocated based on the accrual of post-petition interest, even though, under the United States Bankruptcy Code, interest is no longer accruing.  Plaintiff asserts—mistakenly—that this result is mandated by the Intercreditor Agreement.  Plaintiff also seeks a release of the Holdback Amounts to the First Lien Noteholders.  See id. ¶ 47.  The Collateral Agent does not receive the monthly adequate protection payments and is not holding the escrowed funds.  See Halstead Decl., Ex. C at 27-29; see also id. at 14-16 (granting monthly payments as adequate protection to the Prepetition First Lien Creditors, not to the Collateral Agent); see also Halstead Decl., Ex. G at 2-3.

On or about March 16, 2015, Wilmington Trust was served with the summons and complaint filed in this action ("the Complaint").  See Halstead Decl., Ex. H at 2.  As such, it had until April 15, 2015 to answer or otherwise respond to the Complaint.  See id.  As of the date of this filing, Wilmington Trust has not answered or otherwise responded to the Complaint. Wilmington Trust's time to do so has been adjourned by this Court until this Motion, the motion to intervene of Titan Investment Holdings LP ("Titan") and motions for remand and transfer are resolved.  See Order entered Apr. 20, 2015 (ECF Doc. No. 26) at 2.

On March 20, 2015, Wilmington Trust, purporting to act as the Collateral Agent, sent a memorandum (the "March Memorandum") to the First Lien Creditors, including Plaintiff and the Secured Swap Providers, informing them—for the first time—that it did not "intend to take any action with respect to" the Complaint, and urging them to "consult with their own legal

---

[3]   Plaintiff also named BONY, in its capacity as escrow agent under the Escrow Agreement. See Halstead Decl. ¶ 11.  On April 13, 2015, before this action was removed to this Court, Plaintiff filed a Notice of Dismissal Without Prejudice of Nominal Defendant The Bank of New York Mellon Trust Company, N.A. Pursuant to N.Y. C.P.L.R. § 3217(a)(1), which was so ordered by the State Court that day.  See Halstead Decl. ¶ 17.

and financial advisors regarding [their] rights with respect to" the Complaint.  See Halstead Decl., Ex. H at 3.  The March Memorandum also expressly states that the action may affect "each of the Secured Parties' rights," including those of the Secured Swap Providers.  See id.

On April 10, 2015, the Secured Swap Providers jointly filed an order to show cause in the State Court permitting them to intervene as defendants in this action.  See Halstead Decl. ¶ 16. The same day, Titan also filed an order to show cause in the State Court permitting it to intervene as a defendant in this action.  See id.  On April 13, 2015, Justice Saliann Scarpula granted the Secured Swap Providers' order to show cause and ordered Plaintiff and Defendants to show cause on May 7, 2015 why an order permitting the Secured Swap Providers to intervene as defendants should not be entered.  See id.  On April 14, 2015, Wilmington Trust, purporting to act solely in its capacity as Administrative Agent, removed this action to this Court.  See id. ¶ 18.

On April 20, 2015, the Collateral Agent sent a second memorandum (the "April Memorandum") to the Prepetition First Lien Creditors and their respective representatives, in which the Collateral Agent disclosed that although it intended to appear in this action, "it does not currently intend to take a position in the dispute over the allocation and distribution of the adequate protection payments among the Secured Parties."  Halstead Decl., Ex. I at 5.

## ARGUMENT

The Secured Swap Providers are entitled to intervene in this action as a matter of right pursuant to Rule 24(a)(2) because they have a direct economic stake and legally cognizable interest in the outcome of this action and their interests are not being adequately represented by the current parties to this action.  See Brennan v. N.Y.C. Bd. of Educ., 260 F.3d 123, 130-31 (2d Cir. 2001); Jakubik v. Schmirer, No. 13 Civ. 4087, 2013 WL 3465857, at *1 (S.D.N.Y. July 9, 2013) (Engelmayer, J.).  In the alternative, the Secured Swap Providers should be permitted to

intervene by permission pursuant to Rule 24(b)(1)(B) because they have claims and defenses that present common questions of law and fact with the allegations raised by Plaintiff.  <u>Degrafinreid v. Ricks</u>, 417 F. Supp. 2d 403, 407 (S.D.N.Y. 2006); <u>Techcap. Corp. v. Amoco Corp.</u>, No. 99 Civ. 5093, 2001 WL 267010, at *3 (S.D.N.Y. Mar. 19, 2001).

**I.      The Secured Swap Providers Are Entitled To Intervene As Of Right Pursuant To Rule 24(a)(2)**

Rule 24(a)(2) permits intervention as of right to anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2). This Court has held that to intervene pursuant to Rule 24(a)(2):

> "an intervenor must show that: (1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject matter of the action; (3) the protection of the interest may as a practical matter be impaired by the disposition of the action; and (4) the interest is not adequately protected by an existing party."

<u>Jakubik</u>, 2013 WL 3465857, at *1 (<u>quoting</u> <u>St. John's Univ., N.Y. v. Bolton</u>, 450 F. App'x 81, 83 (2d Cir. 2011) (Summary Order); <u>Restor-A-Dent Dental Labs, Inc. v. Certified Alloy Prods., Inc.</u>, 725 F.2d 871, 874 (2d Cir. 1984)).  The Secured Swap Providers meet these criteria, beyond peradventure.

<u>First</u>, in examining timeliness, courts in this Circuit have observed that "'[t]imeliness defies precise definition, although it certainly is not confined strictly to chronology.'"  <u>In re Tribune Co. Fraudulent Conveyance Litig.</u>, 291 F.R.D. 38, 41 (S.D.N.Y. 2013) (citation omitted).  Among other things, courts consider "'prejudice to existing parties resulting from any delay'" and "'prejudice to the [movant] if the motion is denied.'"  <u>Id.</u> (citation

omitted).  Here, the Secured Swap Providers moved for intervention promptly after receiving notice from Wilmington Trust that it would not, as Collateral Agent, take any action in the case. At that time, no answer or other response had been filed.  Intervention plainly would not unduly delay the action or prejudice any party.

Second, a party is entitled to intervene when it claims "'an interest relating to the property or transaction which is the subject matter of the action[.]'" Jakubik, 2013 WL 3465857, at *1 (citations & internal quotation marks omitted).  Such interest should be "'direct, substantial, and legally protectable.'" Brennan, 260 F.3d at 129 (citation omitted); see also Export-Import Bank of Repub. of China v. Grenada, No. 13 Civ. 1450, 2013 WL 4414875, at *5 (S.D.N.Y. Aug. 19, 2013) (concluding that intervenor had a substantial interest in a lawsuit where the action would constrain payments made to the proposed intervenors); E. Potato Dealers, Inc. v. TNC Packing Corp., No. 08-CV-6280 CJS, 2011 WL 2669632, at *11 (W.D.N.Y. July 6, 2011) (granting motion to intervene as of right based on intervenors' interests in escrowed funds).

Here, Plaintiff is seeking a declaratory judgment and judgment directing specific performance that would apply the Intercreditor Agreement, to which the Secured Swap Providers are express parties, in a way that would benefit the First Lien Noteholders' directly at the Secured Swap Providers' expense.  See Halstead Decl., Ex. A ¶¶ 37-47.  Thus, the Secured Swap Providers not only hold interests that are "direct, substantial, and legally protectable," the Secured Swap Providers are the real targets of the Plaintiff's claims.

Third, a proposed intervenor must demonstrate that it "'may be impaired by'" the Court's judgment.  Jakubik, 2013 WL 3465857, at *1 (citations & internal quotation marks omitted); see also Bridgeport Guardians, Inc. v. Delmonte, 602 F.3d 469, 474 (2d Cir. 2010) (movants demonstrated interest sufficient for intervention where they "asserted that as a practical

matter the interim order could impede their rights"). Courts have found that the potential <u>stare</u> <u>decisis</u> effect of an adverse decision on a proposed intervenor may "supply the practical disadvantage which warrants intervention of right" because such a decision could impair the intervenor's ability to protect its interests in subsequent actions. <u>Hartford Fire Ins. Co. v. Mitlof</u>, 193 F.R.D. 154, 161-62 (S.D.N.Y. 2000) (finding that, as a practical matter the petitioner's interests will be impaired by a judgment in the plaintiff's favor); <u>see</u> <u>also</u> <u>Md. Cas. Co. v. W.R.</u> <u>Grace & Co.</u>, No. 88 Civ. 4337, 1996 WL 34154, at *2 (S.D.N.Y. Jan. 30, 1996) (intervenors "might suffer practical disadvantage from decisions issued in this case if they attempted to relitigate the issues in a later action, and they thus meet the impairment requirement for intervention as of right").

Here, Plaintiff (or the First Lien Noteholders for whom it is a proxy) would undoubtedly argue that because Wilmington Trust acts as Collateral Agent for the Secured Swap Providers, the Secured Swap Providers are bound by any judgment here, even if the Secured Swap Providers are not parties. Accordingly, the Secured Swap Providers clearly satisfy the third requirement for intervention as of right.

<u>Fourth</u>, the Secured Swap Providers' interests are not adequately represented by, and will not be adequately protected by, any of the current parties. A proposed intervenor's interest is deemed not to be adequately represented when its interest and the interests of the parties to the litigation are not identical. <u>See</u> <u>Jakubik</u>, 2013 WL 3465857, at *1-2; <u>TIG Ins. Co.</u> <u>v. Huber</u>, No. 3:04-CV-646, 2005 WL 806714, at *3 (D. Conn. Apr. 5, 2005); <u>In re U.S. Lines,</u> <u>Inc.</u>, 169 B.R. 804, 829 (Bankr. S.D.N.Y. 1994) (noting that the intervenors were not adequately represented where they did not "share identical incentives"), <u>rev'd on other grounds</u>, 220 B.R. 5 (S.D.N.Y. 1997), <u>rev'd on other grounds</u>, 197 F.3d 631 (2d Cir. 1999). The Supreme Court has noted that the burden of demonstrating that an intervenor's interests may not be adequately

represented "should be treated as minimal." Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972); see also In re Pandora Media, Inc., Nos. 12 Civ. 8035, 41 Civ. 1395, 2013 WL 6569872, at *9 (S.D.N.Y. Dec. 13, 2013) ("Because a party must only carry a 'minimal' burden to demonstrate inadequate representation, the uncertainty here—even if minor—suggests that intervention is proper").  Indeed, intervenors will not be adequately represented where, as here, the named parties have made clear that they will not defend the action.  Windsor v. U.S., 797 F. Supp. 2d 320, 324 (S.D.N.Y. 2011) (granting motion to intervene where the Department of Justice made clear that it would not defend the constitutionality of the Defense of Marriage Act).  Furthermore, courts have found that an intervenor's interests are not adequately represented where a named party has no economic interest in the action.  See Mitlof, 193 F.R.D. at 162 (concluding that an intervenor was not adequately represented where the defendant had no financial interest in the determination of the priority of coverage under insurance policies).

Here, Wilmington Trust, purporting to act as Collateral Agent, has no economic interest in the monthly adequate protection payments and has stated on two separate occasions, in writing, that it does not intend to file an answer or otherwise respond to the Complaint, or take a position in the action.  See Halstead Decl., Ex. H at 3; Halstead Decl., Ex. I at 5.  Nevertheless, the Collateral Agent has also expressly recognized that the interests of the Secured Swap Providers, among others, may be affected.  See Halstead Decl., Ex. H at 3; Halstead Decl., Ex. I at 5.  The Collateral Agent's representation that it has no intention to take any position with respect to the instant dispute directly rebuts any claim that Wilmington Trust can or will sufficiently represent the interests of the Secured Swap Providers.  Thus, it is indisputable that the Secured Swap Providers' interests in this action are not otherwise being represented.  The appearance of Wilmington Trust in its capacity as Administrative Agent in no way alters this conclusion.  The Administrative Agent acts only for the Lenders who are providing it with

direction to advance their own parochial interests.[4]   It does not act for the Secured Swap Providers.  In its capacity as Administrative Agent, Wilmington Trust has no greater rights or obligations or standing with respect to interpreting or enforcing the Intercreditor Agreement than the Secured Swap Providers who are both original signatories to that agreement.  Moreover, Wilmington Trust, in its capacity as Administrative Agent, has consented to the intervention of the Secured Swap Providers in open court.  See Halstead Decl., Ex. J at 10.

The Secured Swap Providers manifestly satisfy all of the requirements of Rule 24(a)(2).  Thus, their motion to intervene as of right pursuant to Rule 24(a)(2) should be granted.

## II.    In The Alternative, The Secured Swap Providers Should Be Granted Permissive Intervention Pursuant To Rule 24(b)(1)(B)

In the alternative, the Court should grant the Secured Swap Providers the right to intervene pursuant to Rule 24(b)(1)(B), which provides that upon timely motion, the court may permit anyone to intervene who "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  It is well settled that Rule 24(b)(1)(B) is "to be liberally construed" in favor of intervention.  Degrafinreid, 417 F. Supp. 2d at 407; Williston v. Feliz, No. 04 Civ. 4454, 2005 WL 1669008, at *1 (S.D.N.Y. July 14, 2005) (citing McNeill v. N.Y.C. Hous. Auth., 719 F. Supp. 233, 250 (S.D.N.Y. 1989)).

In considering a motion to intervene pursuant to Rule 24(b), "the court should not read the words 'claim' or 'defense' in a technical sense, but as requiring *some interest* on the part of the movant."  Techcap., 2001 WL 267010, at *3 (emphasis added) (finding that intervention was proper pursuant to Rule 24(b)(1)(B)).  Courts have permitted intervention pursuant to Rule 24(b)(1)(B) where, as here, the intervenors asserted an "interest in a portion of

---

[4]    The economic interests of the Lenders and the Secured Swap Providers in the outcome of this dispute may not be congruent.  This is due to their potentially differing contractual rights to obtain post-petition and default interest payments.

the escrow fund at issue." Tide Nat. Gas Storage I, L.P. v. Falcon Gas Storage Co., No. 10 CV 5821, 2012 U.S. Dist. LEXIS 188864, at *5 (S.D.N.Y. Aug. 7, 2012).  Specifically, an interest in escrowed funds presents "common questions of law and fact . . . that warrant joint adjudication of the [intervenors'] interests along with those of the Parties."  Id.

    Here, it is indisputable that the Secured Swap Providers have claims and defenses that share a legal and factual nexus with the allegations raised in the Complaint.  Indeed, as noted above, the Secured Swap Providers assert proprietary interests in the Holdback Amounts and in future adequate protection payments (see supra at 3-4), which present "common questions of law and fact that warrant joint adjudication of" their interests along with those of the parties. See Falcon Gas, 2012 U.S. Dist. LEXIS 188864, at *5.  Specifically, the Secured Swap Providers have a real and substantial interest in the outcome of this proceeding because, among other things, Plaintiff asks this Court to endorse its improper interpretation of the Intercreditor Agreement and, in turn, bind the Prepetition First Lien Creditors, including the Secured Swap Providers, to such interpretation.  See Halstead Decl., Ex. A ¶¶ 37-47.  Notably, Plaintiff's counsel conceded on the record at the status conference on April 20, 2015, that the Secured Swap Providers "do have economic interests" in the outcome of this litigation.  See Halstead Decl., Ex. J at 11:13.  In addition, Plaintiff's counsel expressly stated that "[t]o the extent the intervenors have economic interests separate from [Wilmington Trust], I would not oppose intervention because I think it would be proper to allow them to intervene."  Id. at 13:17-20.

    In this action, Plaintiff is seeking a judgment that would cause both immediate and future significant financial harm to the Secured Swap Providers by allocating to them a smaller share of the monthly adequate protection payments going forward and by immediately releasing their current share of the Holdback Amounts to the First Lien Noteholders. See Halstead Decl., Ex. A ¶ 47.  The Secured Swap Providers have moved to intervene in this

action to ensure that the resolution of the allocation methodology dispute is based on a proper and informed application of the Intercreditor Agreement.  Although the Intercreditor Agreement is not a two-party agreement, this action is currently a two-party dispute between the Lenders and the First Lien Noteholders.  Moreover, the Court will also benefit from hearing the Secured Swap Providers' perspective in assessing the important issues with respect to the proper allocation calculation and the impact that the skewed and misplaced interpretation being advanced by Plaintiff, on behalf of the First Lien Noteholders, will have on them.

   Additionally, as set forth above, the Secured Swap Providers' Motion is timely and will not cause any undue delay or prejudice the rights of any other party.  For these reasons, the Court should grant the Secured Swap Providers' Motion to intervene pursuant to Rule 24(b)(1)(B).

## CONCLUSION

For the foregoing reasons, the Secured Swap Providers respectfully request that this Court grant their joint motion to intervene in this action.

Dated:      New York, New York
            April 24, 2015

CADWALADER, WICKERSHAM &                CLEARY GOTTLIEB STEEN &
TAFT LLP                                HAMILTON LLP

By: s/ *Howard R. Hawkins, Jr.*         By: s/ *Thomas J. Moloney*
    Howard R. Hawkins, Jr.                  Thomas J. Moloney
    Ellen M. Halstead                       Sean A. O'Neal
    Michele Maman                           Zoe E. Shea

    One World Financial Center              One Liberty Plaza
    New York, NY 10281                      New York, NY 10006
    Telephone:  (212) 504-6000             Telephone:  (212) 225-2000
    Facsimile:  (212) 504-6666             Facsimile:  (212) 225-3999

    Mark C. Ellenberg (admitted *pro hac vice*)   *Attorneys for Proposed Intervenor*
    700 Sixth Street,  N.W.                 *J. Aron & Company*
    Washington, DC 20001
    Telephone:  (202) 862-2200
    Facsimile:  (202) 862-2400

    *Attorneys for Proposed Intervenor*
    *Morgan Stanley Capital Group Inc.*