**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

DELAWARE TRUST COMPANY, as TCEH
First Lien Indenture Trustee,

                       Plaintiff,

      -against-

WILMINGTON TRUST, N.A., as First Lien
Collateral Agent and First Lien Administrative
Agent,

                    Defendant.

Case No. 1:15-cv-02883-PAE

---

## PLAINTIFF'S MEMORANDUM
## IN RESPONSE TO RENEWED MOTIONS TO INTERVENE

KOBRE & KIM LLP

Michael S. Kim
Michael.Kim@kobrekim.com

Jeremy C. Hollembeak
Jeremy.Hollembeak@kobrekim.com

Melanie L. Oxhorn
Melanie.Oxhorn@kobrekim.com

800 Third Avenue
New York, New York 10022
Tel    +1 212 488 1200

*Counsel for Plaintiff*
*Delaware Trust Company*
*as TCEH First Lien Indenture Trustee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................................... ii-iii

PRELIMINARY STATEMENT............................................................................................... 1

COUNTER-STATEMENT OF FACTS.................................................................................... 2

  I.    THE MOTIONS FOR INTERVENTION ARE PREMATURE AND SHOULD BE DENIED WITHOUT PREJUDICE TO RENEWAL AFTER ISSUES OF FEDERAL SUBJECT MATTER JURISDICTION AND ABSTENTION ARE DETERMINED........................................................................................................... 5

  II.   ANY RULING REGARDING WHETHER THE SECURED SWAP PROVIDERS QUALIFY FOR INTERVENTION WOULD BE A WASTE OF JUDICIAL RESOURCES AS SUCH RULING WOULD HAVE TO BE REVISITED UNDER CPLR STANDARDS................................................................................................... 7

  III.  THE REQUIREMENTS FOR INTERVENTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 24 ARE NOT MET WITH RESPECT TO TITAN............................................................................................................................ 9

CONCLUSION........................................................................................................................ 11

i

## TABLE OF AUTHORITIES

**Cases**

*ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Montana,*
   213 F.3d 1108 (9th Cir. 2000) ..................................................... 5

*Avitts v. Amoco Prod. Co.,*
   53 F.3d 690 (5th Cir. 1995) ........................................................ 5

*Castaways Motel v. Schuyler,*
   24 N.Y.2d 120 (1969) ................................................................ 7

*Cong. Factors Corp. v. Meinhard Commercial Corp.,*
   129 Misc. 2d 726, N.Y.S.2d 917 (Sup. Ct. 1985) ...................... 7

*Country Vill. Towers Corp. v. Preston Commc'ns, Inc.,*
   289 A.D.2d 363, N.Y.S.2d 227 (2001) ...................................... 8

*Cunningham v. BHP Petroleum Great Britain PLC,*
   427 F.3d 1238 (10th Cir. 2005) ................................................. 5

*Guetzko v. KeyBank Nat. Ass'n,*
   No. C08-2067, 2008 WL 5110945 (N.D. Iowa Dec. 4, 2008) .... 7

*Hickerson v. City of New York,*
   932 F. Supp. 550 (S.D.N.Y. 1996) ............................................ 6

*In re Fitzgeralds Gaming Corp.,*
   261 B.R. 1 (Bankr. W.D. Mo.  2001) ........................................ 6

*In re Michener,*
   217 B.R. 263 (Bankr. D. Minn. 1998) ....................................... 6

*In re Missouri Properties, Ltd.,*
   211 B.R. 914 (Bankr.W.D. Mo. 1996) ...................................... 6

*J-T Associates. v. Hudson River-Black River Regulating Dist.,*
   175 A.D.2d 438, N.Y.S.2d 122 (1991) ...................................... 8

*Moore v. Comfed Sav. Bank,*
   908 F.2d 834 (11th Cir. 1990).......................................................................................... 7

*U.S. ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.,*
   486 F. Supp. 2d 1233 (D. Colo. 2007) ........................................................................... 5

*Univ. of S. Alabama v. Am. Tobacco Co.,*
   168 F.3d 405 (11th Cir. 1999).......................................................................................... 5

**Statutes & Rules**

28 U.S.C. § 1334................................................................................................................ 6

CPLR 1001.......................................................................................................................... 7

CPLR 1012.......................................................................................................................... 7

CPLR 1013.......................................................................................................................... 7

Fed. R. Civ. P. 24 ................................................................................................. 7, 8, 9, 10

Plaintiff Delaware Trust Company, in its capacity as successor indenture trustee ("Plaintiff" or the "Trustee") on behalf of the beneficial holders of 11.50% senior secured notes due October 1, 2020 issued by Texas Competitive Electric Holdings Company LLC and TCEH Finance, Inc. and guaranteed by certain of their affiliates and subsidiaries (collectively, the "Obligors"), submits this memorandum in response to the motions (ECF Dkt. Nos. 31 and 39, the "Motions to Intervene") filed by, respectively, (a) Titan Investment Holdings LP ("Titan"), and (b) Morgan Stanley Capital Group Inc. and J. Aron & Company, jointly (the "Secured Swap Providers" and, together with Titan, the "Proposed Intervenors").

## PRELIMINARY STATEMENT

Plaintiff commenced this action (the "State Action") in the Commercial Division of the Supreme Court of the State of New York, New York County (the "State Court") to resolve a dispute (the "Allocation Dispute") among secured lenders under an Intercreditor Agreement[1] governed by New York law. Following removal of the State Action to this Court by Defendant Wilmington Trust, N.A. ("Defendant Wilmington"), Plaintiff promptly filed a motion to remand the action to State Court (ECF Dkt. No. 39, the "Motion to Remand"), on which the Court will hear argument (including from the Proposed Intervenors) on May 13, 2015.

Against this backdrop, the Proposed Intervenors have moved this Court for expedited consideration of their renewed requests to intervene as parties in the State Action. For the reasons set forth below, the Court should decline the invitation to resolve the Motions to Intervene at this time, without prejudice to the rights of the Proposed Intervenors to renew such motions to the appropriate Court.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motions to Intervene.

1

Plaintiff's pending Motion to Remand requires the Court to determine whether it has subject matter jurisdiction over the State Action and, even if so, whether the Court should abstain from exercising any such jurisdiction it may have.  As explained herein, granting the Motions to Intervene before these determinations are made may be a waste of this Court's time if the State Action is subsequently remanded to the State Court.

As the Court knows, Plaintiff does not oppose (and this Court has already approved) the Proposed Intervenors' request to be heard on the other legal issues that are now properly before this Court – namely, federal jurisdiction, abstention, and transfer.  Thus, denial of the Motions to Intervene without prejudice to such motions being renewed before the State Court (or the U.S. Bankruptcy Court, as the case may be) will not prevent the Proposed Intervenors from doing what they wish now:  to file briefs and make arguments on the issues of remand and transfer.

Accordingly, the Motions to Intervene should be denied without prejudice to their later renewal once the threshold issues raised by the Motion to Remand have been determined and the State Action is pending before the court of competent jurisdiction that will decide the merits of the Allocation Dispute.  If the Court nevertheless decides to rule on the Motions to Intervene, intervention by Titan should be denied for the reasons discussed below.

## <u>COUNTER-STATEMENT OF FACTS</u>

The Allocation Dispute involves the competing claims to certain escrowed funds of three tranches of First Lien Creditors.  To the best of Plaintiff's knowledge and belief, the First Lien Creditors number in the hundreds or even thousands – each of whom has an "interest" in the escrowed funds, in the broad sense that they are economically affected by the allocation. However, legal documents governing those interests for certain of the First Lien Creditors consolidate their legal rights through various agents, including Defendant Wilmington, as

Administrative Agent for the bank lenders, and Plaintiff, as Trustee for the noteholders.[2]    For

example, the Credit Agreement governing the bank debt provides, in relevant part:

> Each Lender hereby irrevocably designates and appoints the Administrative
> Agent as the agent of such Lender under this Agreement … and irrevocably
> authorizes the Administrative Agent, in such capacity, to take such action on its
> behalf under the provisions of this Agreement … and to exercise such powers and
> perform such duties as are expressly delegated in the Administrative Agent by the
> terms of this Agreement …, together with such other powers as are reasonably
> incidental thereto.

Credit Agreement § 12.1(a).[3]

In turn, by these same legal documents as well as the Intercreditor Agreement, all First

Lien Creditors have delegated certain rights regarding their collateral (or its proceeds), including

the allocation and distribution thereof, to Defendant Wilmington, as Collateral Agent, separate

from Defendant Wilmington's role as Administrative Agent for the bank debt.  *See, e.g.*, Credit

Agreement § 12.1(b) ("[E]ach Lender … hereby irrevocably designate[s] and appoint[s] the

Collateral Agent as the agent with respect to the Collateral …."); *id.*, § 11.14 ("Application of

Proceeds.  Any amount received by the Administrative Agent … or the Collateral Agent from

any [Obligor] (or from proceeds of any Collateral) following any acceleration of the Obligations

under this Agreement or any Event of Default with respect to [a bankruptcy filing of any

Obligor] shall be applied in accordance with Section 4.1 of the Intercreditor Agreement.").

In the State Action, Plaintiff seeks to resolve the Allocation Dispute by requesting (a) a

declaratory judgment concerning the construction and application of Section 4.1 of the

Intercreditor Agreement and (b) an order of specific performance that binds the Collateral Agent

---

[2] It appears from the Motions to Intervene that some form of agency exists among swap counterparties as well, as the Secured Swap Providers purport to collectively represent substantially all of the US $1.2 billion outstanding swap debt while at the same time Titan discloses that certain of its affiliates own interests in approximately US $854 million of such amount.  Thus, it is possible that all three Proposed Intervenors are acting at the direction of Titan and its affiliates.

[3] A copy of the Credit Agreement is attached as Exhibit A to the Affirmation of Ronit Berkovich in support of Titan's Motion to Intervene (ECF Dkt. No. 37).

and the escrow agent in possession of the Holdback Amounts to release, allocate and distribute the Holdback Amounts in accordance with the declaratory judgment requested in (a) above.  In addition to Defendant Wilmington (in its capacity as Collateral Agent) and the escrow agent,[4] Plaintiff named Defendant Wilmington (in its capacity as Administrative Agent) as a defendant to the State Action because, in such capacity, it represents bank lenders, which collectively have approximately 95% of the economic interests of all First Lien Creditors other than the noteholders represented by Plaintiff.[5]

By their Motion to Intervene, the Secured Swap Providers purport to represent a part of the remaining 5% of such economic interests that are not represented by Defendant Wilmington as Administrative Agent for bank debt.  As they correctly note, the Secured Swap Providers are also two of the four swap counterparties that, along with the existing parties to the State Action and Obligors, are signatories to the Intercreditor Agreement.

Separately, by its Motion to Intervene, Titan seeks to intervene solely in its capacity as a holder of approximately US $167 million of bank debt, or less than 1% of the class of bank debt already represented by Defendant Wilmington in its capacity as Administrative Agent.

---

[4] Plaintiff agreed to dismiss the escrow agent without prejudice from the State Action pursuant to a stipulation that was so-ordered by the State Court prior to removal of the State Action to this Court.

[5] Other than disclosures by a handful of entities in the Obligors' bankruptcy cases, Plaintiff generally is unaware of the identity or economic interests of the bank lenders and swap counterparties, and did not name any such First Lien Creditors as a party to the State Action.

I.    **THE MOTIONS FOR INTERVENTION ARE PREMATURE AND SHOULD BE DENIED WITHOUT PREJUDICE TO RENEWAL AFTER ISSUES OF FEDERAL SUBJECT MATTER JURISDICTION AND ABSTENTION ARE DETERMINED**

This Court should defer addressing the Motions to Intervene until it determines whether federal subject matter jurisdiction exists and, even if so, whether this Court should abstain in favor of the State Court.  If the Court finds either lack of subject matter jurisdiction or that it should abstain from exercising federal jurisdiction, any expedited rulings on intervention would be subject to *vacatur* as involving an unauthorized exercise of federal judicial authority.

It is well-established that a U.S. District Court should avoid ruling on a motion for intervention or other substantive motions in an action removed to it from a State court, until the U.S. District Court first establishes its own subject matter jurisdiction over the action.[6]  If this Court were to make rulings on any substantive matters (including intervention) before remanding the case back to the Supreme Court of the State of New York, all of those pre-remand rulings would have to be vacated.  Accordingly, this Court should not address the Motions to Intervene at this stage but should instead revisit the issue (if necessary), after resolution of Plaintiff's Motion to Remand.

---

[6] *See, e.g., Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 409-11 (11th Cir. 1999) (discussing numerous cases from several circuits and emphasizing basic principle that once federal court to which action has been removed determines that it is without subject matter jurisdiction, that court is powerless to act on motions or make substantive rulings and, consequently, federal courts should resolve issue of their subject matter jurisdiction before reaching merits of any other issue); *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Montana*, 213 F.3d 1108, 1117 (9th Cir. 2000) (remanding to district court with instructions to vacate joinder order before remand case to state court, holding district court did not have power to join party-defendant because it lacked jurisdiction over improvidently removed case); *Avitts v. Amoco Prod. Co.*, 53 F.3d 690, 694 (5th Cir. 1995) (per curiam) (directing remand of case to state court and vacating all orders entered by district court, holding district court was "without authority to enter its orders" in improvidently removed case); *U.S. ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 486 F. Supp. 2d 1233, 1235 (D. Colo. 2007) (stating district court had no power to decide non-party's motion for leave to intervene, regardless of its merit, because the court "lacks subject matter jurisdiction over this action" and thus cannot "rule on a motion to intervene . . . or any other substantive motion") (citing *Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005)).

Moreover, even assuming, *arguendo*, that the Court determines that it has jurisdiction, the Motion to Remand also asserts a claim for mandatory abstention under 28 U.S.C. § 1334(c)(2), which precludes the Court from exercising that jurisdiction and likewise invalidates any substantive decisions.   Thus, under the principles of federalism underlying the abstention doctrine, neither this Court nor the Delaware Bankruptcy Court would have the ability to adjudicate the State Court Action and render any rulings therein if the six factors of mandatory abstention in § 1334(c)(2) are present.[7]   In other words, the inquiry as to *whether* federal judicial power may be exercised should precede any concern about *how* that power, if valid, should be exercised for purposes of making rulings in a removed State case.[8]

Finally, the Proposed Intervenors will not suffer prejudice as a result of being denied intervention now, because at this stage the issues before the Court relate solely to the questions of removal or transfer, as opposed to the underlying contractual dispute in which they claim an interest.   In support of their respective Motions to Intervene, the Secured Swap Providers and Titan both speculate that their interests may not be congruent with the interests represented by Defendant Wilmington *on the merits of the Allocation Dispute*.   In seeking an expedited disposition of such motions, however, the Proposed Intervenors have not articulated a reason why Defendant Wilmington cannot adequately represent their interests on the questions of removal or transfer presently before the Court,[9] and in any event they are being permitted by this Court to submit separate briefing and argument on those questions.

---

[7] *See In re Fitzgeralds Gaming Corp.*, 261 B.R. 1, 8 (Bankr. W.D. Mo.  2001); *In re Michener*, 217 B.R. 263, 267 (Bankr. D. Minn. 1998); *In re Missouri Properties, Ltd.*, 211 B.R. 914, 919 (Bankr. W.D. Mo. 1996).

[8] *See Hickerson v. City of New York*, 932 F. Supp. 550, 556, 559 (S.D.N.Y. 1996) ("In light of [the Court's] . . . decision to abstain, the motions for intervention [filed by various non-parties] are denied as premature, subject to renewal when these cases are reopened following the conclusion of the state proceedings and without prejudice to motions for intervention in the state proceedings.").

[9] By contrast, in the lone case previously cited to the Court by the Proposed Intervenors for the proposition that intervention should be granted prior to this Court establishing whether it has subject matter jurisdiction, there was

Accordingly, the Court should deny the Motions to Intervene without prejudice to such motions being renewed before the State Court (or the U.S. Bankruptcy Court, as the case may be) after the issues of remand and transfer have been decided.

## II. ANY RULING REGARDING WHETHER THE SECURED SWAP PROVIDERS QUALIFY FOR INTERVENTION WOULD BE A WASTE OF JUDICIAL RESOURCES AS SUCH RULING WOULD HAVE TO BE REVISITED UNDER CPLR STANDARDS

As explained above, any expedited rulings by this Court on intervention would have to be vacated if it is determined that this Court lacks subject matter jurisdiction.  In addition, the analysis that this Court would have conducted on intervention issues under Federal Rule of Civil Procedure 24 will have been wasted, because the State Court would have to examine the issues afresh under the New York Civil Practice Law and Rules ("CPLR") and New York case law. Although the applicable standards for intervention under the CPLR[10] are similar in some ways to those of Federal Rule of Civil Procedure 24, they are not identical.

Although the Secured Swap Providers' intervention position – unlike Titan's – does not suffer from having an agent already appearing on their behalf, nevertheless there are real questions under the CPLR regarding whether they have the *right* to intervene.  New York courts have emphasized that the applicable definition of "necessary party" in the CPLR is to be narrowly construed.[11]  Moreover, as one court observed, "[j]oinder is not necessary where the

---

reason to believe that the named defendant (who concededly had no interest in the outcome of the dispute) would not represent the would-be intervenor's interests *in connection with the remand motion itself.   See Guetzko v. KeyBank Nat. Ass'n*, No. C08-2067, 2008 WL 5110945, at *3 (N.D. Iowa Dec. 4, 2008).

[10] In seeking to intervene before the State Court prior to removal, the Proposed Intervenors invoked N.Y. CPLR 1012 and 1013 (governing mandatory and permissive intervention, respectively).  Also relevant is N.Y. CPLR 1001 (governing joinder of a "necessary party"), as it is generally recognized under both New York and federal law that "the standard for intervention as of right is the same as that of required joinder."   *Moore v. Comfed Sav. Bank*, 908 F.2d 834, 839 n.1 (11th Cir. 1990).

[11] *See Castaways Motel v. Schuyler,* 24 N.Y.2d 120, 125 (1969); *see also Cong. Factors Corp. v. Meinhard Commercial Corp.,* 129 Misc. 2d 726,729 N.Y.S.2d 917 (Sup. Ct. 1985) ("The definition of necessary party [under N.Y. CPLR 1001(a)] has been strictly construed.").

interest of the non-joined party and a party who has been joined stand or fall together."[12] Furthermore, New York law does not require that all parties to a contract must be joined in every litigation involving that contract, particularly where the interest of the non-party are aligned with the interests of one or more existing parties to the contractual dispute.  Thus, notwithstanding they are signatories to the Intercreditor Agreement, it is far from clear that the Secured Swap Providers would have the right under the CPLR to intervene in the State Action.

Although the issue may become moot once this case is returned to the New York State Court because Plaintiff may not object to the permissive intervention of the Secured Swap Providers, it is unnecessary for this Court to grapple (on an expedited basis) with theoretical questions under federal procedure. This is especially true given the Court has already permitted the Secured Swap Providers to file briefs and argue at the upcoming hearing.

Regardless, if despite the impracticalities, the Court wishes to adjudicate on an expedited basis whether the Secured Swap Providers can intervene – under federal standards – Plaintiff does not take a position on the issue, and does not object to the Secured Swap Providers intervening in this case before this Court.

## III.   THE REQUIREMENTS FOR INTERVENTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 24 ARE NOT MET WITH RESPECT TO TITAN

Notwithstanding Point I above, if the Court decides to rule on the Motions to Intervene, intervention by Titan should be denied, because Titan cannot meet the requirements for intervention under Rule 24 of the Federal Rules of Civil Procedure.

---

[12] *Country Vill. Towers Corp. v. Preston Commc'ns, Inc.,* 289 A.D.2d 363, 364 N.Y.S.2d 227 (2001) (internal quotations and citations omitted); *id.* (noting even though non-joined party "may be affected by the outcome of the action," it was not a "necessary party" because its interests were aligned with existing party-defendant's interests); *see also, e.g., J-T Associates. v. Hudson River-Black River Regulating Dist.,* 175 A.D.2d 438, 440 N.Y.S.2d 122 (1991) (holding non-joined party "was not a necessary party because its interests were represented" by existing party).

To establish a right of mandatory intervention, Titan bears the burden of establishing that (1) it has an interest relating to the property or transaction which is the subject of the State Action, (2) that disposing of the State Action may as a practical matter impair or impede its ability to protect its interest, and (3) its interest is not adequately protected by an existing party.[13]

While Titan has an economic interest in a broad sense connected to the Allocation Dispute, the third element cannot be met for several reasons.

*First,* Titan has not shown that existing Defendant Wilmington (as Administrative Agent) will not protect its interests.  Titan's initial fear that Defendant Wilmington would not seek to remove the State Action prior to the removal deadline turned out to be unfounded.  Now that Defendant Wilmington has appeared, through skilled and able counsel, Titan has not articulated any concern that Defendant Wilmington will not represent its interests with respect to the threshold remand/abstention/transfer issues before the Court.[14]

*Second,* even with respect to the underlying Allocation Dispute, at this point, Titan can only speculate that the interests of Defendant Wilmington "may diverge at some future date from those of Titan" as a result of bank lenders not all sharing the same interest rate under the Credit Agreement.[15]  This is because Defendant Wilmington (as Administrative Agent) has not yet taken a specific position on any issues that may arise in the underlying Allocation Dispute.  Thus, Titan can only theorizes that Defendant Wilmington will take a position with which it disagrees.  But that has not occurred and may never occur.

*Third,* Titan cannot demonstrate a separate legal standing apart from Defendant Wilmington, which it has already appointed as Administrative Agent.  Titan seeks to intervene

---

[13] *See* Fed. R. Civ. P. 24 (a)(2).

[14] In any event, if such an argument exists, Titan already has permission to separately present it to the Court.

[15] *See* Memorandum of Law in Support of Titan Investment Holdings LP's Motion to Intervene (ECF Dkt. No. 34), at 13.

solely in its capacity as a holder of approximately US $167 million of bank debt, or less than 1% of the class of bank debt already represented by Defendant Wilmington as Administrative Agent. Pursuant to the provision of the Credit Agreement quoted above, all bank debt creditors have appointed Defendant Wilmington as agent to act on behalf their interest as holders of bank debt, extended or non-extended.  Thus, anyone who holds bank debt under these conditions (including Titan) has already consented to having Defendant Wilmington act as agent for the entire group. Having done so, Titan is bound by the actions of Defendant Wilmington and cannot for this purpose divorce itself from this agreement.

Neither should the Court admit Titan as a party under the principles of permissive intervention.[16]  Regardless of the Court's view on whether Titan's various speculations on what Defendant Wilmington might do in the future qualifies as a "claim" under Federal Rule of Civil Procedure 24 (b)(1)(B), conferring party status on Titan would lead to unnecessary complication and delay as other similarly situated bank debt holders could make similar requests.[17]  As noted above, there are potentially numerous holders of bank debt, the identities of which are changing constantly as the debt trades among different investors.  This Court should not set a precedent that an individual debt holder who speculates about Defendant Wilmington's future conduct may appear as a party, despite clearly having appointed Defendant Wilmington as Administrative Agent for precisely this purpose.

Accordingly, if the Court decides to rule on the Motions to Intervene, intervention by Titan should be denied.

---

[16] *See* Fed. R. Civ. P. 24 (b).

[17] *See* Fed. R. Civ. P. 24 (b)(3) ("In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.").

**CONCLUSION**

The Motions to Intervene should be denied without prejudice.

Dated: New York, New York
        May 1, 2015

                              KOBRE & KIM LLP

              By:           */s/Michael S. Kim*
                            Michael S. Kim
                            Michael.Kim@kobrekim.com

                            Jeremy C. Hollembeak
                            Jeremy.Hollembeak@kobrekim.com

                            Melanie L. Oxhorn
                            Melanie.Oxhorn@kobrekim.com

                            800 Third Avenue
                            New York, New York 10022
                            Tel     +1 212 488 1200

                            *Counsel for Plaintiff*
                            *Delaware Trust Company*