**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
DELAWARE TRUST COMPANY, as TCEH   :
First Lien Indenture Trustee,            :
                                      :
              Plaintiff,          :
                                      :
          -against-          :      Case No. 1:15-cv-02883-PAE
                                      :
                                      :
WILMINGTON TRUST, N.A., as First Lien   :
Collateral Agent and First Lien Administrative   :
Agent,                                  :
                                      :
              Defendant.    :
-----------------------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF TITAN INVESTMENT HOLDINGS LP'S REPLY TO PLAINTIFF'S OPPOSITION TO TITAN'S MOTION TO INTERVENE

Salvatore Romanello, Esq.
Ronit Berkovich, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Tel:  (212) 310-8000

Attorneys for Proposed Intervenor-Defendant Titan
Investment Holdings LP

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.    THIS COURT SHOULD RULE ON TITAN'S MOTION TO INTERVENE ........................................................................................... 2

II.    TITAN HAS ESTABLISHED THAT IT IS ENTITLED TO MANDATORY INTERVENTION UNDER RULE 24(A)(2) ............................ 3

    A.    Titan Has Met Its Minimal Burden of Showing That Its Interest May Not Be Adequately Protected By An Existing Party ......................... 4

    B.    It Is Undisputed That Titan Has An Interest Relating To The Property That Is The Subject Of The Action ............................................... 7

    C.    Titan Does Not Need To Show that It Has Legal Standing Apart From An Existing Party To Intervene in this Action ................................ 7

III.    TITAN HAS ESTABLISHED THAT IT IS ENTITLED TO PERMISSIVE INTERVENTION UNDER RULE 24(B) .................................. 10

CONCLUSION ..................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ARCO Envtl. Remediation, LLC v. Dep't of Health & Envtl. Quality of Mont.*,
213 F.3d 1108 (9th Cir. 2000) ........................................................................................ 3

*Avitts v. Amoco Prod. Co.*,
53 F.3d 690 (5th Cir. 1995) ............................................................................................ 3

*Brooks v. Sussex County State Bank*,
167 F.R.D. 347 (N.D.N.Y. 1996) .................................................................................... 6

*Dixon v. Heckler*,
589 F. Supp. 1512 (S.D.N.Y. 1984) ............................................................................... 5

*Dow Jones & Co., Inc. v. U.S. Dept. of Justice*,
161 F.R.D. 247 (S.D.N.Y. 1995) ........................................................................... 3, 4, 5, 6

*Grutter v. Bollinger*,
188 F.3d 394 (6th Cir. 1999) .......................................................................................... 4

*Guetzko v. Keybank*,
No. C08-2067, 2008 WL 5110945 (N.D. Iowa Dec. 4, 2008) ....................................... 2

*Hickerson v. City of New York*,
932 F. Supp. 550 (S.D.N.Y. 1996) ................................................................................. 2

*Hoblock v. Albany County Bd. of Elections*,
233 F.R.D. 95 (N.D.N.Y. 2005) ..................................................................................... 7

*In re Pandora Media, Inc.*,
Nos. 12 Civ. 8035, 41 Civ. 1395, 2013 WL 6569872 (S.D.N.Y. Dec. 13, 2013) ........ 4

*Manufacturers Trust Co. v. Kelby*,
125 F.2d 650 (2d Cir. 1942) ......................................................................................... 10

*S.E.C. v. Credit Bancorp, Ltd.*,
194 F.R.D. 457 (S.D.N.Y. 2000) .................................................................................. 10

*Sagebrush Rebellion, Inc. v. Watt*,
713 F.2d 525 (9th Cir. 1983) .......................................................................................... 7

*State of New York v. Reilly*,
143 F.R.D. 487 (N.D.N.Y. 1992) .................................................................................... 3

*Tide Nat. Gas Storage I, L.P. v. Falcon Gas Storage Co.*,
No. 10 CV 5821, 2012 U.S. Dist. LEXIS 188864 (S.D.N.Y. Aug. 7, 2012) ................ 9

*Trbovich v. United Mine Workers of Am.*,
404 U.S. 528, 92 S. Ct. 630 (1972) ................................................................................ 4

*U.S. ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*,
488 F. Supp. 2d 1233 (D. Colo. 2007) ........................................................................... 3

*U.S. Postal Service v. Brennan,*
   579 F.2d 188 (2d Cir. 1978) ............................................................................ 7

*Univ. of South Alabama v. Am. Tobacco Co.,*
   168 F.3d 405 (11th Cir. 1999) .......................................................................... 3

*Utah Ass'n of Counties v. Clinton,*
   255 F.3d 1246 (10th Cir. 2001) ..................................................................... 5, 7

**Federal Rules and Statutes**

Fed. R. Civ. P. 24 ............................................................................................... 4, 8

Fed. R. Civ. P. 24(a) ................................................................................................ 8

Fed. R. Civ. P. 24(a)(2) ........................................................................................ 4, 7

Fed. R. Civ. P. 24(b)(1)(B) .................................................................................... 8, 9

Titan Investment Holdings LP ("Titan") respectfully submits this reply to Delaware Trust Company's Opposition ("the Opposition") to Titan's Motion to Intervene ("the Motion") in the above-captioned action brought by plaintiff Delaware Trust Company, as TCEH First Lien Indenture Trustee ("Plaintiff" or "Delaware Trust") against Wilmington Trust, N.A., as First Lien Collateral Agent and First Lien Administrative Agent ("Wilmington Trust").

## PRELIMINARY STATEMENT

Plaintiff offers no meritorious legal rationale as to why Titan's motion to intervene should be denied. Plaintiff first argues that the Court should postpone any decision on the intervention motion because if the Court finds that it does not have subject matter jurisdiction, then the Court's intervention ruling will need to be vacated. But there is no actual substantive basis to deny Titan's intervention motion. Indeed, Plaintiff freely concedes that Titan has a "broad economic interest" in the outcome of this action. That concession alone underscores why intervention is appropriate here. Plaintiff's arguments that Titan cannot show that Defendant Wilmington Trust will not defend Titan's interest, and that Titan can only speculate that the interests of Wilmington Trust and Titan will diverge, completely ignores applicable law. As set forth below, Titan has more than met the *minimal* showing that its interests *may* diverge from an existing party, a standard nowhere mentioned or addressed in Plaintiff's Opposition. Moreover, Plaintiff's argument that Titan does not have standing separate and apart from Wilmington Trust is both irrelevant and incorrect as a legal matter. Second Circuit law is clear that there is no independent standing requirement for an intervenor, nor is Plaintiff correct that Wilmington Trust has the authority to act on Titan's behalf in this action. Accordingly, Titan respectfully requests that this Court grant Titan's Motion to Intervene.

**ARGUMENT**

**I.      THIS COURT SHOULD RULE ON TITAN'S MOTION TO INTERVENE**

Plaintiff argues that Titan's Motion is premature and should be denied without prejudice to renewal after this Court determines whether it has jurisdiction to hear this case. *See* Pl.'s Br. at pp. 5-6. To begin with, there is absolutely no harm to Plaintiff if Titan's intervention application is now granted and later vacated for lack of subject matter jurisdiction. In fact, the burden would be on Titan to renew its application in state court.

Moreover, because Plaintiff concedes that Titan has a "broad economic interest" in the outcome of this action, there is little doubt that Titan is entitled to intervene in this action. *See infra* Section II. It therefore makes little sense for this Court to hold off from addressing the intervention issue, as Titan will be a party to this action, whether in this Court or New York State Court.[1]

*Guetzko v. Keybank*, No. C08-2067, 2008 WL 5110945 (N.D. Iowa Dec. 4, 2008) is instructive. There, the court rejected the very argument Plaintiff makes here, that because the court may not have jurisdiction to rule on the issue of intervention, the court should "first determine the motion for remand before addressing the motion to intervene." Instead, the court held that it had "discretion to address pending motions in the order in which logic and facts require" and that "logic and facts require[d]" granting the motion to intervene before addressing the motion to remand because the existing parties may not have adequately represented the intervenor, and the court's decision on the remand issue could in fact be "aided by [the proposed

---

[1] Plaintiff cites *Hickerson v. City of New York*, 932 F. Supp. 550, 556, 559 (S.D.N.Y. 1996) for the proposition that the Court must decide the issue of mandatory abstention before deciding Titan's Motion to Intervene. *Hickerson* is inapposite. *Hickerson* did not involve an intervening party's interest in escrowed funds — rather, it involved the claimed interest of forty-eight proposed intervenors in an action challenging the constitutionality of zoning laws.

intervenor's] arguments and authority." *Id.* at *3 (citations omitted).  The result should be the same here.  *See also State of New York v. Reilly*, 143 F.R.D. 487, 489 (N.D.N.Y. 1992) ("the court will address the motions to intervene before turning to defendant's motion to dismiss [on jurisdictional grounds].").[2]

The cases cited in support of Plaintiff's argument that the Court should first decide subject matter jurisdiction are inapposite.  None of those cases involve a court's refusal to hear a motion to intervene before deciding subject matter jurisdiction.  Instead, the cases merely stand for the unremarkable proposition that a court cannot rule on substantive matters where it has determined that it lacks subject matter jurisdiction.[3]  That is not the case here.

## II.   TITAN HAS ESTABLISHED THAT IT IS ENTITLED TO MANDATORY INTERVENTION UNDER RULE 24(A)(2)

To establish a right of mandatory intervention, Titan need only:  (1) file a timely motion; (2) demonstrate an interest in the action; (3) show an impairment of that interest arising from an unfavorable disposition; and (4) have an interest not otherwise adequately protected.  *Dow Jones & Co., Inc. v. U.S. Dept. of Justice*, 161 F.R.D. 247, 254 (S.D.N.Y. 1995).  Plaintiff does not contest that Titan has established the first three prongs, but instead argues only that Titan has not

---

[2] Plaintiff's argument regarding the intervenors not meeting the New York C.P.L.R. standard for joinder of necessary parties is nonsensical and in any event inapplicable here.

[3] *See Univ. of South Alabama v. Am. Tobacco Co.,* 168 F.3d 405 (11th Cir. 1999) (vacating dismissal because district court lacked subject matter jurisdiction to entertain the merits of an "important and complicated [] question of state law involving the power of Alabama's Attorney General"); *ARCO Envtl. Remediation, LLC v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108 (9th Cir. 2000) (reversing remand denial and vacating an order joining a party-defendant because the district court did not have the power to issue the joinder order once it determined that it lacked subject matter jurisdiction); *Avitts v. Amoco Prod. Co.*, 53 F.3d 690 (5th Cir. 1995) (instructing district court to remand action and vacating district court's entry of preliminary injunction due to lack of subject matter jurisdiction); *U.S. ex rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 488 F. Supp. 2d 1233 (D. Colo. 2007) (denying party's request to stay entry of judgment dismissing the case for lack of subject matter jurisdiction so the party could consider whether to intervene, because the court had previously determined that it lacked subject matter jurisdiction to enter judgment on the party's behalf).

met its burden of showing that its interest "*is*" not adequately protected by an existing party

under the fourth prong.  Pl.'s Br. at 9.  As set forth below, Plaintiff misconstrues the standard for

intervention, and Titan has more than met its "*minimal*" burden of showing that its interests

"*may*" not be adequately protected by an existing party.  *Trbovich v. United Mine Workers of*

*Am.*, 404 U.S. 528, 538, 92 S. Ct. 630, 636 n.10 (1972) ("The requirement of [Rule 24] is

satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the

burden of making that showing should be treated as minimal."); *Dow Jones*, 161 F.R.D. at 254

(same)).

### A. Titan Has Met Its Minimal Burden of Showing That Its Interest May Not Be Adequately Protected By An Existing Party

Plaintiff misconstrues Rule 24's standard for showing inadequate representation of a

proposed intervenor's interests.  Rule 24(a)(2) does not require an intervernor to show that "its

interest *is* not adequately protected by an existing party."  Pl.'s Br. at p. 9 (emphasis added).

Rather, Rule 24(a)(2) "is satisfied if the applicant shows that representation of its interest *may be*

inadequate and this burden should be treated as *minimal*."  *Trbovich,* 404 U.S. at 538; *Dow*

*Jones.*, 161 F.R.D. at 254; *see also In re Pandora Media, Inc.*, Nos. 12 Civ. 8035, 41 Civ. 1395,

2013 WL 6569872, at *9 (S.D.N.Y. Dec. 13, 2013) ("Because a party must carry only a

'minimal' burden to demonstrate inadequate representation, the uncertainty here—even if

minor—suggests that intervention is proper").

Plaintiff argues that there is no evidence *yet* that Wilmington Trust cannot represent

Titan's interest because Wilmington Trust may not take a position adverse to Titan.  *See* Pl.'s Br.

at p. 9.  This argument is misplaced.  Plaintiff does not dispute that Wilmington Trust *may* take a

position adverse to Titan.  Indeed, courts have routinely held that "proposed intervenors need

show only that there is a *potential* for inadequate representation."  *Grutter v. Bollinger,* 188 F.3d

4

394, 400 (6th Cir. 1999).  Accordingly, "[t]he possibility that the interests of the applicant and the parties *may diverge* need not be great in order to satisfy this minimal burden."  *Utah Ass'n of Counties v. Clinton,* 255 F.3d 1246, 1254 (10th Cir. 2001) (emphasis added); *see also Dixon v. Heckler*, 589 F. Supp. 1512, 1516 (S.D.N.Y. 1984) ("although the State shares a similar objective to that of the plaintiffs—namely, to enjoin the Secretary's use of the severity regulation—the State has some interests in the litigation which are not shared by plaintiffs, and which therefore are not adequately represented by existing parties.").

Here, Titan has more than met its "minimal burden" to show that its interests may diverge from that of Wilmington Trust.  *Dow Jones,* 161 F.R.D. at 254.  As set forth in Titan's Motion, Wilmington Trust lacks any real economic stake in the Monthly Payments at issue.  In fact, Wilmington Trust, in its capacity as Collateral Agent, has recently disclosed that, although it intends to appear in this action, it "does not currently intend to take a position in the dispute over the allocation and distribution of the adequate protection payments among the Secured Parties." *See* Affirmation of Ronit Berkovich annexed hereto ("Berkovich Reply Aff.") Ex. A (Memo from Wilmington Trust dated April 20, 2015).

Indeed, Titan's position may very well be at odds with Wilmington Trust, and other Bank Debt holders.  *See* Affirmation of Joe Freedman annexed to Motion ("Freedman Aff.") ¶¶ 11-14. Wilmington Trust must take direction from a majority of the holders of Bank Debt,[4] who, in turn,

---

[4] *See* Affirmation of Ronit Berkovich annexed to Motion ("Berkovich Aff.") Ex. B (Intercreditor Agreement) § 1 (defining the term "Required Secured Parties" as "Secured Parties owed or holding more than 50% of the sum of . . . the Outstanding Amount under the Credit Agreement . . ."); § 7.3(b) ("The Collateral Agent shall be entitled to refrain from any act or the taking of any action (including the failure to take an action) in connection herewith or any of the other Security Documents or from the exercise of any power, discretion or authority vested in it hereunder or thereunder unless and *until the Collateral Agent shall have received a direction of the Required Secured Parties* and, upon receipt of such direction the Collateral Agent shall be

may or may not have interests aligned with Titan.  There are two types of debt issued by the

Lenders under the Credit Agreement.  One type has a longer maturity date and higher interest

rate ("Extended Debt") and the other has a shorter maturity date and relatively lower interest rate

("Non-Extended Debt").  *See id*.  Although Extended Debt makes up the majority of Debt issued

by the Lenders (*id.* at ¶ 8), Titan holds substantially more Non-Extended Debt than Extended

Debt.  *Id*. at ¶ 9.  Under certain scenarios and assumptions, it is possible that the adoption of the

Plaintiff's interpretation of the Intercreditor Agreement might benefit the holders of Extended

Debt while disadvantaging the holders of Non-Extended Debt, or may disadvantage the holders

of Non-Extended Debt more than the holders of Extended Debt.  *Id.* at ¶ 12.  As such, if a

majority of the Lenders directed Wilmington Trust to take a position advantageous to the holders

of Extended Debt vis-à-vis the holders of Non-Extended Debt the holders of the Non-Extended

Debt could be prejudiced if they were unable to advocate their position in the litigation.  *Id.* at ¶¶

8, 12.  Accordingly, Wilmington Trust may not adequately represent the interests of all of the

Bank Debt holders, in particular the Non-Extended Debt holders such as Titan.  *See Brooks v.*

*Sussex County State Bank*, 167 F.R.D. 347, 352 (N.D.N.Y. 1996) (where plaintiff and intervenor

sought same funds from defendant, intervenor's interests were not adequately protected by either

party since the plaintiff's interests were "clearly adverse" and the defendant bank was

"indifferent" as to which claimant ultimately acquired the funds at issue).  In sum, Titan has

more than met its "minimal" burden of showing that Wilmington Trust may not adequately

protect Titan's interest.  *Dow Jones*, 161 F.R.D. at 254.

---

entitled to act or (where so instructed) refrain from acting, or to exercise such power, discretion
or authority, in accordance with such directions.") (emphasis added).

**B.      It Is Undisputed That Titan Has An Interest Relating To The Property That Is The Subject Of The Action**

Plaintiff argues that Titan "has not articulated any concern that Defendant Wilmington will not represent its interests with respect to threshold remand/abstention/transfer issues before the Court." However, no such showing is required. Rule 24(a)(2) plainly states that "[o]n timely motion, the court must permit anyone to intervene who . . . claims an ***interest relating to the property or transaction that is the subject of the action*** . . ." Fed. R. Civ. P. 24(a)(2) (emphasis added). Moreover, courts have repeatedly confirmed that the "interest of the intervenor is not measured by the particular issue before the court but is instead measured by whether the interest the intervenor claims is related to the property that is the subject of the action." *Utah Ass'n of Counties v. Clinton,* 255 F.3d 1246, 1252 (10th Cir. 2001); *see also Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983) ("There is no support for the dissent's novel proposition that the intervenor's interest and adequacy of representation are measured in relation to the particular issue before the court at the time of the motion . . . ."). Here, Plaintiff has already conceded that Titan has a "broad economic interest" in the subject of this action. Pl.'s Br. at p. 9.

**C.      Titan Does Not Need To Show that It Has Legal Standing Apart From An Existing Party To Intervene in this Action**

Plaintiff also argues that Titan "cannot demonstrate a separate legal standing apart from Defendant Wilmington" because Titan has already appointed Defendant Wilmington "as agent to act on behalf [of its interest] as holders of bank debt, extended or non-extended." Pl.'s Br. at pp. 9-10. This argument is deeply flawed for several reasons.

First, Rule 24 does not require Titan to have a "separate legal standing apart from" an existing party and courts in the Second Circuit have squarely rejected Plaintiff's argument. *See U.S. Postal Service v. Brennan*, 579 F.2d 188, 190 (2d Cir. 1978) ("The existence of a case or controversy having been established as between the [original parties], there was no need to

7

impose the standing requirement upon the proposed intervenor"); *Hoblock v. Albany County Bd. of Elections*, 233 F.R.D. 95, 97 (N.D.N.Y. 2005) ("there is no Article III standing requirement in the Second Circuit, with an intervenor only needing to meet the Rule 24(a) requirements and have an interest in the litigation, if there is already a case or controversy in existence between the original parties to litigation . . . .").

Second, Titan has not consented to Wilmington Trust representing its interests in this lawsuit, and, contrary to Plaintiff's assertions (Pl. Br. at 2–3), Section 12.1 of the Credit Agreement does not establish otherwise.  Rather, in Section 12.1, each Lender provided limited authority to Wilmington Trust:

> to exercise such powers and perform such duties as are expressly delegated to [Wilmington Trust] by the terms of this Agreement and the other Credit Documents, together with such other powers as are reasonably incidental thereto. . . Notwithstanding any provision to the contrary elsewhere in this Agreement, no Agent shall have any duties or responsibilities, except those expressly set forth herein or in any Credit Document. . .

Berkovich Aff. Ex. A (Credit Agreement) § 12.1(a).  By the plain terms of Section 12.1, the agency relationship is limited to duties "expressly delegated" and Titan nowhere expressly delegated to Wilmington Trust the right to act on Titan's behalf with respect to an interpretation of the Intercreditor Agreement directly contrary to Titan's economic interest.  In fact, the Intercreditor Agreement expressly grants First Lien Creditors, such as Titan, the legal right to object to the terms of adequate protection granted to the secured parties in connection with the use of cash collateral if its rights are materially affected, which is exactly what is happening here.[5]  Indeed, the Cash Collateral Order preserved all rights that the First Lien Creditors had to

---

[5] *See* Berkovich Aff. Ex. B (Intercreditor Agreement), at § 6.1 (each "Secured Party retains the right to object to [the] use of Cash Collateral or to the granting of any priming liens over any Collateral if the terms thereof, including the terms of adequate protection (if any) granted to the Secured Parties in connection therewith, do not provide for materially equal treatment to all Secured Parties.").

object to the terms of adequate protection.[6]  Courts have permitted intervention pursuant to Rule 24(b)(1)(B) where, as here, the intervenors asserted "an interest in a portion of the escrow fund at issue."  *Tide Nat. Gas Storage I, L.P. v. Falcon Gas Storage Co.*, No. 10 CV 5821, 2012 U.S. Dist. LEXIS 188864, at *5 (S.D.N.Y. Aug. 7, 2012).

Third, the Credit Agreement expressly delineates the two instances where the Administrative Agent is granted exclusive authority to act on behalf of a Lender: (1) when realizing upon collateral; or (2) enforcing the guarantee of the borrower's obligations.  *See* Berkovich Aff. Ex. A (Credit Agreement) § 12.13(b).  Neither grant of exclusive authority is applicable here.

Fourth, even if Plaintiff's interpretation of Section 12.1 of the Credit Agreement was correct, which it clearly is not, the provisions of Section 12.1 of the Credit Agreement relied upon by Plaintiff "are solely for the benefit of the Agents and the Lenders . . ."  Berkovich Aff. Ex. A (Credit Agreement) at § 12.1.  Accordingly, the Plaintiff Noteholders, who are not a party to the Credit Agreement, have no ability to enforce this provision of the Credit Agreement against any of the Lenders, including Titan.  Notably, the Administrative Agent—who is a party to the Credit Agreement—welcomes Titan's intervention:

> MR. ROSENBERG: We have no objection to the intervention, your Honor, and we think that their views could assist the Court in resolving this matter.
>
> THE COURT: Assuming, hypothetically, there were no intervention, how would you go about assessing what may be the somewhat different views of the potential intervenors here? It seems to me that far from opposing intervention, if I'm in your situation, I benefit from the guidance provided by what may be the diverse views of the intervenors.

---

[6] *See* Berkovich Aff. Ex. F (Cash Collateral Order), at § 6(a) ("Notwithstanding anything to the contrary herein, all rights and claims of the TCEH Debtors and the Prepetition First Lien Creditors with respect to whether the First Lien Adequate Protection Payments should be allocated pursuant to the Petition Date Allocation Calculation or the Postpetition Interest Allocation Calculation are expressly reserved.").

MR. ROSENBERG: I agree, your Honor. That makes sense.

Berkovich Reply Aff. Ex. B (April 20, 2015 Initial Pretrial Conference Transcript), 10:9–19.

Accordingly, Plaintiff's standing argument is incorrect on multiple grounds.

## III.   TITAN HAS ESTABLISHED THAT IT IS ENTITLED TO PERMISSIVE INTERVENTION UNDER RULE 24(B)

Plaintiff also argues that Titan is not entitled to permissive intervention under Rule 24(b) because such intervention would "lead to unnecessary complication and delays as other similarly situated bank debt holders could make similar requests." Pl.'s Br. at p. 10. But, no Bank Debt holders similarly situated to Titan have stepped forward. Plaintiff's assertion that other similarly situated Bank Debt holders *could* make similar requests is pure speculation, and courts in the Second Circuit have rejected these types of arguments. *See, e.g.*, *S.E.C. v. Credit Bancorp, Ltd.*, 194 F.R.D. 457, 465 (S.D.N.Y. 2000) (granting motions to intervene brought "by a multitude of customers of defendants" despite plaintiff's argument that "200 individual customers may well endeavor to intervene in this action" if such motions were granted); *Manufacturers Trust Co. v. Kelby*, 125 F.2d 650, 655 (2d Cir. 1942) (holding that district court did not abuse its discretion in allowing multiple parties including a number of individual bondholders to intervene in an action related to a chapter 11 proceeding). In any event, Plaintiff's concerns regarding multiple intervenors could be readily resolved by transferring this action to the Bankruptcy Court.

## CONCLUSION

For the above reasons and those stated in Titan's opening brief, Titan's Motion to Intervene in these proceedings should be granted.

10

Dated: New York, New York
      May 6, 2015

                        /s/ *Salvatore Romanello*
                        Salvatore Romanello, Esq.
                        Ronit Berkovich, Esq.
                        WEIL, GOTSHAL & MANGES LLP
                        767 Fifth Avenue
                        New York, New York 10153
                        Tel:  (212) 310-8000
                        Attorneys for Proposed Intervenor-Defendant Titan
                        Investment Holdings LP